OPINION
Plaintiffs-appellants, Damon's, Inc., Damon's Franchise Corp., Irving Rossman, and Jerry Rossman, appeal the judgment of the Franklin County Court of Common Pleas granting defendants-appellees, Deloitte Touche, LLP ("Deloitte") and Lawrence A. Hilsheimer, summary judgment on appellants' claims of accountant malpractice. This case arises out of the resulting federal tax obligations from the sale of assets from Damon's Franchise Corp. ("DFC") to Damon's Management, Inc. ("DMI"), an independent corporation that is not a party to this litigation. The Rossmans were the officers and shareholders of Damon's, Inc. ("DI"), and its wholly owned subsidiary DFC. The dispute involves the scope of the professional obligations owed to appellants by Deloitte, DMI's outside accounting firm and tax advisors, and one of its partners, Hilsheimer. For the reasons that follow, we affirm.
In December 1992, the Rossmans and DMI entered into a letter of agreement in which DFC agreed to sell certain assets (primarily franchise contracts, royalty rights, logos, and trademarks) to DMI for $10 million. Under the agreement, DMI would pay $500,000 down and the remainder over fifteen years at seven percent annual interest. After entering into the letter of agreement, the Rossmans consulted with DI's long-standing accountant and tax advisor, James Heine, to provide tax advice related to the transaction.
By letter dated May 11, 1993, Heine told Mr. Rossman that he had reviewed several tax planning options based on the proposed transaction, that none of the options seemed to work, but that his experience in this type of transaction was limited. Heine requested permission to consult with Hilsheimer to go over the various options. In so doing, Heine requested that Rossman sign an enclosed letter that had been drafted at the request of Hilsheimer, acknowledging that Deloitte's primary obligation was to its client, DMI, if any conflicts of interest arose. The actual wording of the letter was apparently drafted by Tom James, a principal at DMI, who forwarded it to Heine. This "acknowledgement letter," dated May 10, 1993, stated as follows:
May 10, 1993
Deloitte Touche
155 E. Broad Street
Columbus, Ohio 43215
Dear Sir:
 This letter is to serve as my acknowledgement that Deloitte Touche is the tax advisor for Damon's Management, Inc. and Damon's International, Inc. I understand that my accountant and tax advisor, Jim Heine, is working with Larry Hilsheimer and his staff of Deloitte to develop an overall tax strategy regarding the acquisition of the Damon's franchise contracts, logos and trademark. As in any tax planning strategies, there may be conflicts between the interested parties in which case, Deloitte's first obligation is to its client.
 With the above understanding, Jim Heine is authorized to provide to Deloitte my personal tax information in order to effectuate the tax planning process.
Yours truly,
Irv Rossman /s/
Rossman signed the acknowledgement letter.
On May 12, 1993, Heine met with Hilsheimer to discuss the tax issues relating to the transaction. The scope and purpose of this meeting, as well as what was communicated between Heine and Hilsheimer, is in dispute between the parties and forms the essential basis of this litigation.
On June 27, 1993, a final agreement was reached and executed between appellants and DMI. Under the agreement, DMI purchased the assets for a total of $10 million — $1.5 million cash to the Rossmans and the remaining $8.5 million in monthly installments over fifteen years to DI. In 1996, the IRS audited DI's 1993 and 1994 tax returns. The IRS ruled that DI should have recognized the entire $8.5 million purchase price as income in 1993 and that this amount would have been subject to the alternative minimum tax ("AMT"). Eventually, DI was ordered to pay just over $1 million in federal corporate tax deficiency, including interest.
On January 23, 1997, appellants filed an action against appellees alleging claims of professional negligence. In general, appellants alleged that appellees failed to disclose that the entire transaction amount would be subject to the AMT in 1993 and failed to disclose other facts that would have prevented appellants from incurring unnecessary tax liability. According to appellants' complaint, appellants would have refused to proceed with the transaction as structured but for appellees' failure in this regard.
On June 10, 1997, appellees filed a motion for summary judgment attaching affidavits of Heine and Hilsheimer. According to these affidavits: (1) Heine consulted Hilsheimer for the limited purposes of helping Heine identify alternative tax structuring ideas that Heine should consider arising from the transaction as proposed; and (2) Hilsheimer fully provided the advice that was sought, including the applicability of the AMT.
On November 5, 1997, appellants filed their memorandum contra relying on an affidavit of Mr. Rossman, the depositions of Heine and Hilsheimer, and an affidavit of appellants' expert witness, L. Theodore Neighbors, C.P.A. According to appellants, there were genuine issues of material fact that Deloitte was to provide advice to appellants on any and all methods available to minimize the tax consequences of the transaction, including the possibility of restructuring the transaction from an asset sale to a stock sale or altering the payment terms to provide more initial cash to pay the AMT tax liability. Appellants also contended that, even if the scope of appellees' services was limited, appellees failed to adequately provide advice on those limited issues.
By decision and entry filed December 18, 1998, the trial court granted appellees' motion for summary judgment. In so doing, the trial court found that there was no genuine issue of material fact that appellees' engagement with appellants was limited to identifying the alternative tax structuring ideas to be used by Heine as related to the transaction as structured. According to the trial court, "that [appellants] were to be providing ideas to Heine, who, in turn, was to use those ideas, along with those of his own professional making, to fashion the transaction, with regard to taxes, as most beneficial to his client. * * * [Appellants] were relying upon Heine, not the defendants, to advise them appropriately as to the transaction." (Decision, at 10.)
On December 30, 1998, the trial court filed a judgment entry reflecting its prior decision. It is from this entry that appellants appeal raising the following six assignments of error:
First Assignment of Error
 There is a genuine issue of material fact as to whether appellees were engaged as an agent or tax consultant for Appellants.
Second Assignment of Error
 There is a genuine issue of material facts as to whether James Heine agreed to limit the scope of services to be provided by Appellees.
Third Assignment of Error
 There are genuine issues of material fact as to whether Appellees breached the duties under their broad engagement with Appellants by failing to provide all appropriate advice.
Fourth Assignment of Error
 There is a genuine issue of material fact as to whether Appellees' conduct fell below the standard of care for accountants in accepting or continuing the engagement without disclosing to Appellants actual conflicts of interest.
Fifth Assignment of Error
 The trial court erred in relying solely on James Heine's affidavit when this affidavit was contradicted by his deposition testimony and by other documentary evidence.
Sixth Assignment of Error
 The trial court erred as a matter of law in disregarding the testimony of Appellants' expert regarding the standard of care owed by Appellees to Appellants.
All six of appellants' assignments of error challenge the trial court's decision to grant summary judgment for appellees.
Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:
 * * * [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc.v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 629, citingHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,65-66. Appellate review of summary judgment is de novo. Koos v.Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6,8.
"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,292. Once the moving party meets its initial burden, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial. Id. "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present `a sufficient disagreement to require submission to a jury' or is it `so one-sided that one party must prevail as a matter of law[?]'" Turner v. Turner (1993), 67 Ohio St.3d 337, 340 (quotingAnderson v. Liberty Lobby, Inc. [1986], 477 U.S. 242 at 251-252).
While appellants have assigned six separate assignments of error, appellants recognize that the "principal issue" before this court is simply whether there was a genuine issue of material fact as to two issues: (1) was the scope of appellees' engagement with appellants limited to those matters described by Heine in his affidavit, and, if so, (2) did appellees fully disclose to Heine the impact of the AMT to the transaction? (See appellants' reply brief at 1.) Appellants concede that summary judgment was appropriate if the record below failed to establish a genuine issue of material fact as to both issues. As such, we do not address each of appellants' assignments of error separately, but address the arguments raised therein through our resolution of the issues identified above.
Issue One: Is there a genuine issue of material fact precluding summary judgment on the grounds that the scope of appellees' engagement with appellants, and hence the professional obligations owed to appellants, was limited to identifying options to minimize the taxes associated with the sale as structured?
In order to maintain an action for accountant negligence, a plaintiff must establish the existence of a duty, breach of that duty, and damages proximately caused by the breach. See Second Natl. Bank of Warren v. Demshar (1997), 124 Ohio App.3d 645,648; Dynes Corp. v. Seikel, Koly Co., Inc. (1994), 100 Ohio App.3d 620,634. In general, an accountant owes a duty of reasonable, ordinary care to its client and to those limited third parties whose reliance on the accountant's representation is specifically foreseen. Haddon View Investment Co. v. Coopers Lybrand (1982), 70 Ohio St.2d 154; Dynes Corp., supra. However, an accountant's obligation to a client may generally be limited by the contractual relationship that exists between the accountant and his client. See Wagenheim v. Alexander Grant Co. (1983),19 Ohio App.3d 7, 11.
In support of its position that the scope of the services to be provided by appellees to appellants was limited, appellees argue that appellants are legally bound by the terms of the engagement entered into by their agent, Heine. See MasterConsolidated Corp. v. BancOhio Nat'l Bank (1991), 61 Ohio St.3d 570. As evidence that the terms of that engagement were limited, appellees rely on the affidavits of Heine and Hilsheimer, both filed with appellees' motion for summary judgment.
In his affidavit, Heine testified: (1) that he retained, and met with, Hilsheimer for the limited purpose of identifying alternative tax structuring ideas that Heine should consider in attempting to minimize the tax consequences to appellants arising from the proposed transaction; (2) that Heine sought advice as to a limited set of issues, in particular, the options available to minimize the corporate tax liability from the asset sale and to minimize the impact of the second level of taxation on the distribution of the sale proceeds to the Rossmans; (3) that Hilsheimer provided advice on these issues including the possible effect a pre-closing or post-closing subchapter S election would have on the federal AMT and the applicability of the built-in gain taxation under IRS Code Section 1374; (4) that Hilsheimer's role was limited to explaining options for consideration and analysis but that any final decision was Heine's based upon the particular financial information that Heine was to receive from appellants and which Hilsheimer did not have; and (5) that Hilsheimer was never asked to advise and did not advise Heine on issues relating to the structure of the transaction itself given that Heine understood that Hilsheimer could not do so because of Hilsheimer's obligations and relationship with his client, DMI.
In his affidavit, Hilsheimer testified, consistently with Heine, that Heine requested him to assist in "identifying tax concepts" for Heine to consider in attempting to minimize the federal tax liability in connection with the transaction, that he limited his role to identifying such options, and that he did not advise Heine on the structure of the transaction itself. (Affidavit at paragraph 3.)
Appellants do not dispute that they are bound by whatever engagement Heine entered into with appellees. Rather, appellants contend that there is a genuine issue of material fact as to what, in fact, was the nature of the engagement between Heine and appellees. Appellants contend that, despite Heine's and Hilsheimer's affidavits, a genuine issue of material fact is created by Heine's deposition testimony, by the language of the acknowledgment letter, and by the affidavit of their expert, Mr. Neighbors. Moreover, appellants argue that Heine lacks credibility and, therefore, should not be relied upon to support summary judgment. We find, however, that none of appellants' contentions create a genuine issue of material fact that the scope of appellees' engagement with appellants was not limited.
First, Heine's deposition testimony does not indicate that the scope of the engagement was not limited. Appellants rely on portions of Heine's deposition in which he testified: (1) that he did not know whether Deloitte had prepared anything that limited the terms of the engagement; (2) that he did not recall using the terms "limited engagement" or "limited purpose" in his conversations with appellees; and (3) that he did not recall appellees ever indicating that they could not give advice or recommendations related to the structuring of the transaction.
Such testimony, however, does not conflict with his affidavit. Whether or not he knew of anything Deloitte may have prepared that specifically limited the engagement, whether or not he specifically used the terms "limited engagement" or "limited purpose," and whether or not Hilsheimer specifically indicated that he could not give advice as to the structuring of the transaction is not inconsistent with Heine's affidavit testimony that he sought Hilsheimer's advice on specific, limited areas. Appellants have pointed to nothing in Heine's deposition where he testified that the engagement was not limited or where his testimony was even equivocal in this regard. Cf. Turner v. Turner
(1993), 67 Ohio St.3d 337 (summary judgment improper when party's earlier deposition was equivocal on matter unambiguously and specifically stated in affidavit); Ferguson v. Franklin Cty.Children's Serv. (Jan. 8, 1991), Franklin App. No. 90AP-502, unreported (1991 Opinions 36) (plaintiff's deposition testimony that he did not file a grievance or request that a grievance be filed on his behalf was not inconsistent with plaintiff's affidavit statement that union president informed plaintiff that union would not support plaintiff's claim for overtime wages if he did file one).
Second, we do not find that Heine is so lacking in credibility as to preclude summary judgment on the basis of his testimony. In Killilea v. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163,167, this court ruled that "[i]f an issue is raised on summary judgment, which manifestly turns on the credibility of the witness because his testimony must be believed in order to resolve the issue, and the surrounding circumstances place the credibility of the witness in question — for example, where the potential for bias and interest is evident — then, the matter should be resolved at trial, where the trier of facts has an opportunity to observe the demeanor of the witness." Here, appellants have presented no evidence showing why or how Heine's affidavit filed on behalf of Deloitte would benefit him or that he has an interest in helping Deloitte obtain summary judgment in this litigation.
Finally, we find that appellants' reliance on the language of the acknowledgement letter (including the testimony of appellants' expert related to that letter) does not create a genuine evidentiary conflict as to the scope of the engagement between Heine and Hilsheimer. As noted above, the acknowledgement letter, signed by Mr. Rossman and forwarded to Hilsheimer, states that: "I [Mr. Rossman] understand that my accountant and tax advisor, Jim Heine, is working with Larry Hilsheimer and his staff of Deloitte to develop an overall tax strategy regarding the acquisition of the Damon's franchise contracts, logos and trademark." Appellants' expert, Neighbors, states in his affidavit that:
 "It is my opinion that this letter does not limit [Deloitte] to minimizing the tax consequences of an asset sale, and does not put Irving Rossman on notice of that limitation, but instead more broadly states that [Deloitte] was to develop with Heine an overall strategy for minimizing the taxes related to the transaction." (Neighbors' Affidavit at paragraph 16.)
Significantly, however, Mr. Neighbor's affidavit does not indicate that anything in the acknowledgement letter affirmatively created a broad engagement between appellants and appellees. Rather, by repeating the letter's phrase "develop an overall tax strategy," Mr. Neighbors' affidavit testimony merely indicates that the acknowledgement letter states what it states. Moreover, Mr. Neighbors admitted in his deposition that the acknowledgment letter was not an engagement letter as he would understand it in the accounting profession. Rather, the entire purpose of the letter was for Mr. Rossman to acknowledge that Deloitte represented DMI. Nothing in the letter purports to be a representation from Deloitte concerning the scope of its engagement with Heine. As such, we find that an isolated sentence in the acknowledgement letter is insufficient to create an evidentiary conflict that the engagement between Heine and Hilsheimer was not otherwise limited. In order to survive summary judgment, the nonmovant must produce more than a scintilla of evidence in support of its position. Redd v. Springfield Twp.School Dist. (1993), 91 Ohio App.3d 88, 92.
In sum, we find that appellants failed to set forth specific facts creating a sufficient disagreement to require submission to a jury on the issue of the scope of appellees' engagement. As a result, the trial court did not err in finding that there was no genuine issue of material fact and that, as a matter of law, appellees were engaged for the limited purposes of identifying options to consider in minimizing the taxes associated with the transaction as structured.
Issue two: Is there a genuine issue of material fact that appellees fully identified the applicability and impact of the federal alternative minimum tax to the sale as structured?
Appellants argue that, even if appellees' duty was limited to identifying options available to minimize the taxes associated with the sale, there are genuine issues of material fact as to whether appellees fully identified the applicability and impact of the AMT to the transaction and, in particular, failed to inform Heine that appellants would be liable under the AMT for the tax on the full transaction amount in 1993.
In so doing, appellants cite several pages of Heine's deposition in which appellants contend show that Heine did not know of the AMT until the IRS audit in 1996, that Heine did not know when the taxes that appellants would owe would be payable, that Heine did not properly calculate the AMT on DI's 1993 tax return, that Heine's notes of the meeting with Hilsheimer failed to discuss the AMT, and that Hilsheimer never provided anything in writing that disclosed the applicability of the AMT. According to appellants, such testimony is inconsistent with Heine's affidavit statements indicating that Hilsheimer fully informed Heine concerning the applicability of the AMT.
We find, however, that Heine repeatedly testified in his deposition that the AMT was discussed at the meeting with Hilsheimer. In fact, the key portion of Heine's deposition relied upon by appellants refutes appellants' characterization that Hilsheimer failed to inform Heine of the applicability of the AMT:
A. No.
 Q. In 1993 or 1994, did you advise Irv Rossman to pay an alternative minimum tax on 20 percent of the adjusted income from the sale of any assets?
A. No.
Q. And why was that?
A. I was not aware of it until the IRS exam came up.
 Q. Deloitte Touche never told you that there would be an AMT tax of 20 percent on the adjusted income from the transaction that was being entered into?
A. They told me that, yes.
Q. They told you that?
A. Yes.
 Q. I thought you just said a moment ago that you were unaware of that.
* * *
 Q. You said — "Question: In 1993 or 1994, did you advise Irv Rossman to pay an alternative minimum tax on 20 percent of the adjusted income from the sale of any assets?
"No.
"Question: And why was that?
 "Answer: I was not aware of it until the IRS exam came up."
A. Correct.
Q. Sir, the IRS exam came up in 1996; didn't' it?
* * *
Q. The IRS exam was in 1996; wasn't it?
A. I believe so.
 Q. So it wasn't until then that you knew that an AMT tax was payable on the adjusted income from the sale of assets; is that right?
 A. For Damon's, Inc., no, I was not aware. I did not recall that that needed to be done.
 Q. Okay. And that's because Deloitte never told you about that; isn't that true?
 A. No, that's not true. They told me about it. I missed it.
Q. They told you —
A. I'm sorry. I missed it.
 Q. They told you about it in one of these meetings or telephone conversations, but you blew it, right? Is that your testimony?
 A. I did not make the calculation and include it with the return.
 Q. Okay. Now, do you have anything in writing from Deloitte that indicates that they told you that there would be an AMT tax to Damon's, Inc. on 20 percent of the adjusted income from the sale of assets to Damon's Management?
Mr. Zeiger: Could you read the question back, please?
 Mr. Greenwald: Do you have anything in writing from Deloitte that indicates that they told you that there would be an AMT tax to Damon's, Inc. on 20 percent of the adjusted income from the sale of assets to Damon's Management?
A. No.
 Q. Do you have any notes that reflect that you were told that?
A. No.
Q. And, of course, you never told Mr. Rossman that?
A. No. [Tr. 224-227.]
Thus, Heine's deposition does not indicate that Hilsheimer failed to adequately inform Heine about the AMT, but indicates, as the trial court found, that Heine failed to use the information provided by Hilsheimer.
Appellants also rely on certain internal documents from Deloitte that appellants contend show that appellees fail to specifically mention the AMT. In particular, appellants highlight a January 13, 1993 internal memo drafted by Hilsheimer, a May 20, 1993 memo of Dave Petrill (an associate of Hilsheimer's), and a copy of Hilsheimer's notes of the May 12th meeting. We find, however, that appellant's reliance is unfounded. First, Hilsheimer's January memorandum was drafted before any engagement was entered into between the parties. Second, the purpose of Dave Petrill's May 20th memorandum was to discuss possible options for avoiding double taxation (i.e., taxation at the corporate and shareholder levels) and, as such, would not necessarily address the particular AMT applicability at the corporate level. Finally, Hilsheimer's May 12th meeting notes consist of a single page outlining two alternative options on how to proceed as apparently discussed at the meeting. We do not find that failure of these notes to specifically include the words AMT creates a genuine issue of fact that appellees failed to adequately discuss its impact to Heine.
In short, we find that appellees have failed to present sufficient evidence creating a genuine issue of material fact that appellees failed to adequately discuss the AMT and its implications to Heine. As such, we do not find that the trial court erred in granting summary judgment in this regard.
For the foregoing reasons, all six of appellant's assignments of error are not well-taken and are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KENNEDY and BOWMAN, JJ., concur.