Barry F. BOVEE, et al., Plaintiffs,

v.

COOPERS & LYBRAND,
et al, Defendants.

No. C2–97–449.

United States District Court,
S.D. Ohio,
Eastern Division.

May 16, 2002.

Gene Irving Mesh, Gene Mesh & Associates, Cincinnati, OH, for plaintiffs.

David Stewart Cupps, Vorys Sater Seymour & Pease, Columbus, OH, for defendant Coopers & Lybrand.

Quintin Franc Lindsmith, Bricker & Eckler, Columbus, OH, Jeffrey B. Finnell, Willkie Farr & Gallagher, New York City, for defendants Christopher L. White, Dennis P. Wilburn, Richard A. Widders, Jr., R. Jay Roberts.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court on the Order of Remand of the United States Court of Appeals for the Sixth Circuit. (Doc. # 83). The issue before the Court is Defendants' Motion to Dismiss Counts I, III, and IV. (Doc. # 19). For the reasons

set forth below, the Court concludes that Defendants' Motion to Dismiss is **DENIED IN PART and GRANTED IN PART.**

## I.

Plaintiffs are members of the general public who purchased stock in Mid–American Waste Systems, Inc., ("MAW"), a publicly traded corporation. MAW later disclosed serious financial irregularities and filed for bankruptcy protection, causing the investors' stock to lose value. Plaintiffs sued certain MAW accountants, Coopers & Lybrand and Coopers & Lybrand L.L.P. (collectively, "Coopers"). Coopers performed accounting services for MAW, which included the audit of financial statements which were part of MAW's filings with the Securities and Exchange Commission ("SEC").

Plaintiffs' complaint asserts that they were sold MAW stock at inflated prices; that false financial information about MAW was disseminated to them; and that they suffered great monetary loss when MAW, without warning, filed for bankruptcy protection. Plaintiffs brought claims against Coopers for securities fraud and for its role in assisting in the sale, at an allegedly inflated price, of MAW stock in violation of 15 U.S.C. § 78j(b) and 78t(a). Plaintiffs also assert claims of professional negligence and negligent misrepresentation under Ohio law.

On June 4, 1997, Coopers filed a Motion to Dismiss Counts III and IV, negligence and negligent misrepresentation, asserting that Plaintiffs' Complaint failed to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 19). Additionally, Defendants moved to dismiss Count I, securities fraud, for failure to allege the claim with the particularity required by Private Securities Litigation Reform Act and Rule 9(b) of the Federal Rules of Civil Procedure. (*Id.*).

On September 5, 1997 the parties filed a Joint Status Report, indicating that Defendants had motioned the Multi–District Litigation ("MDL") Panel to consolidate this case with two other pending cases; one pending in the district court of New Jersey and the other pending in this Court. (Doc. # 45). The MDL Panel set a hearing for September 19, 1997. (*Id.*).

On October 9, 1997, the MDL Panel Ordered this case transferred to the District Court of New Jersey. (Doc. # 46). Plaintiffs filed an Amended Complaint in the District Court of New Jersey on October 31, 1997. (Doc. # 47).

The record is not clear as to the progress of this case after it was transferred to New Jersey. It appears that Plaintiffs requested that the MDL Panel transfer the case back to Ohio, which the Panel ordered on March 22, 1999. (Doc. # 54). When the case was transferred back to Ohio only the original Complaint, and not the Amended Complaint, was transferred with it.

On September 30, 1999, this Court granted in part Defendants' Motion to Dismiss Counts I, III, and IV that it had previously filed in this Court. (Doc. # 63). The Court granted the motion with regard to Counts III and IV and granted the motion with regard to Count I with the provision that Plaintiffs be given twenty days to file an amended complaint on the claim.

Plaintiffs did not file an amended complaint, and instead filed a Notice of Intent to Stand on Amended Class Action Complaint on December 6, 1999. (Doc. # 66). The Sixth Circuit concluded that Plaintiffs did not realize that the Amended Complaint was not part of the record before this Court, apparently not yet being trans-

ferred from the District Court in New Jersey. (Doc. # 83).

On December 21, 1999, this Court dismissed the case in accordance with its September 30, 1999 Order. (Doc. # 67). Plaintiffs appealed to the Sixth Circuit on December 23, 1999. (Doc. # 68). While the case was on appeal, Plaintiffs filed a Motion for *Hirsch* Remand with this Court. (Doc. # 71). The Court denied the motion on March 21, 2000. (Doc. # 75).

On November 21, 2001, the Sixth Circuit remanded the case so that this Court could consider Plaintiffs' claims in light of their Amended Complaint. (Doc. 83).

## II. STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir.1987) (*en banc*). In reviewing the dismissal, this Court must construe the complaint liberally in the non-movant's favor and accept as true all factual allegations and permissible inferences therein. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). A "complaint need not set down in detail all the particularities of a plaintiff's claim." *Id.* The complaint, however, must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. Thus, a 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. *Cheriee Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the

claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

## III. DEFENDANTS' MOTION TO DISMISS

### A. Plaintiffs' Fraud Claims

Count I of Plaintiffs' Amended Complaint alleges securities fraud in violation of Sections 10(b) and 20(a) of the Private Securities Litigation Reform Act, ("PSLRA"), 15 U.S.C. § 78j(b) and 78t(a), and in violation of Rule 10B–5, 17 C.F.R. § 240.10(b)–5. (*Amended Complaint* ¶¶ 281–291). Defendants contend that this claim should be dismissed for failure to plead fraud with particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure and for failure to satisfy the heightened pleading requirements of the PSLRA. (*Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment,* at 5–11).

The Sixth Circuit, in this case, set forth the following analysis of Plaintiffs' fraud claims:

Under Fed.R.Civ.P. 9(b), "in all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Plaintiffs may not simply rely on the proposition that Defendants must have known or should have known of, and participated in, the fraud. Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b). *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2nd Cir.1982). As courts have noted, Rule 9(b) has three (3) broad purposes:

"In the context of securities litigation it has generally been held that Rule 9(b) serves three purposes: (1) it ensures that allegations are specific

enough to inform a defendant of the act of which the plaintiff complains, and to enable him to prepare an effective response and defense; (2) it eliminates those complaints filed as a pretext for the discovery of unknown wrongs—a 9(b) claimant must know what his claim is when he files; and (3) it seeks to protect defendant from unfounded charges of wrongdoing which injure their reputations and goodwill."

*Vennittilli v. Primerica, Inc.,* 943 F.Supp. 793, 798 (E.D.Mich.1996) (quoting *Benoay v. Decker,* 517 F.Supp. 490, 492 (E.D.Mich.1981)). Therefore, plaintiffs are required to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Under this Court's interpretation of the "required state of mind" under PSLRA:

"Plaintiffs may plead scienter in § 10b or Rule 10b–5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging the facts merely establishing that a defendant had the motive and opportunity to commit securities fraud." Consequently, we must reject the reasoning of the district court to the extent it concluded that plaintiffs just "plead specific facts that create a strong inference of knowing misrepresentation on the part of the defendants" in order to establish a defendant's scienter in a securities fraud case brought under § 10b or Rule 10b–5.

*In re Comshare Inc. Securities Litig.,* 183 F.3d 542, 549 (6th Cir.1999).

While rejecting a stringent pleading requirement, the Sixth Circuit has nonetheless required the plaintiff to plead facts which indicate "a mental state embracing intent to deceive, manipulate or defraud," *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). This mental state is recklessness, and a Plaintiff may survive a motion to dismiss by pleading facts which give rise to a "strong inference" of recklessness. *In re Comshare,* 183 F.3d at 550. By this Court's interpretation, "recklessness [is] highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." *Id.* at 550 (citation and internal quotation marks omitted).

· · ·

Only one of Plaintiffs' allegations must satisfy the pleading standard in order to survive dismissal of the Complaint. *See Federated Management Co., v. Coopers Lybrand,* 137 Ohio App.3d 366, 738 N.E.2d 842 (2000).

■ A review of the Amended Complaint reveals, in contrast to the Complaint, allegations that Coopers' internal assessments demonstrate that Coopers had knowledge of the risk that MAW was misleading Coopers.

Paragraphs 173–74 of the Amended Complaint allege that Coopers internal recommendation was to resign as MAW's auditors in September 1995 based upon risk assessment, but then decided in November 1995 to continue to work for and certify MAW for an increased fee. The Amended Complaint states:

173. . . . [Coopers'] "Risk Management Assessment React Form" initially indicated that [Coopers] should not continue to serve as MAW's auditors but should resign. Engagement partner William Cornely admits as much on that form.

174. Although clearly a high risk audit, [Coopers] willingly took the risk once their audit fee increased from $144.000

to 235,000, in addition to further concessions by MAW on the terms of the payment....

Paragraphs 175–177 of the Amended Complaint outlines the issues Coopers' engagement partner, William G. Cornely, considered in making his recommendation that Coopers resign as MAW's auditors in September of 1995. The Amended Complaint states:

175. A memorandum from [Coopers] engagement partner William G. Cornely to Dave Breen ... dated September 27, 1995, expressly stated that, based on the risk factors in the MAW audit, "there is a rebuttable presumption that [Coopers] should terminate the relationship [with MAW]."

176. This memorandum briefly detailed [Coppers'] relationship with MAW, starting with the year end 1993 audit through the date of the memorandum. It noted that:

* In 1993, MAW had to restate their Third Quarter 1993 results with respect to accounting for restructuring charges, asset impairment provisions and discontinued operations accounting treatment. On December 10, 1994 the company filed an amendment to a Form S–3, which provided [Coopers'] consent to the incorrect accounting noted herein;

* During the course of conducting the 1994 audit, [Coopers] became aware of: (a) violations of MAW's debt covenants; and (b) the U.S. Attorney's criminal investigation of MAW and White[1] regarding the operation of a Gary, Indiana landfill;

* In 1995, [Coopers] became aware of the close relationship between certain

of the Individual Defendants and a public company called Future Healthcare, a company that acknowledged material misrepresentations in its audited financials.

* Also in 1995, [Coopers] was aware of a proxy fight at MAW, wherein a former MAW Chairman opposed MAWs slate of directors. MAW's proposal included [Coopers] as outside auditors.

177. All of the above issues led Cornely to recommend that [Coopers] resign as MAWs auditors, concluding that "[a]ccordingly I would recommend we terminate the client relationship as soon as practical." In that regard, Cornely had drafted a letter to MAW indicates (*sic*) that [Coopers] was resigning from the MAW audit. This letter was unsigned and it is unclear if he ever sent it to MAW. In any event, [Coopers] did not resign from the account.

Paragraph 178 of the Amended Complaint alleges that the only reason Coopers did not resign as the internal risk assessment had recommended was the fact that Coopers was given a significant increase in pay. The Amended Complaint states:

178. In spite of his own recommendations, less than two months later, Cornely changed his position and recommended that [Coopers] continue to audit MAW's financials. The only real change in "circumstances" was that [Coopers'] fee for the audit increased dramatically, [Coopers] did not staff the engagement team with more experienced personnel, did not increase the expertise of the engagement team, did not begin on-site investigations of MAW's landfill facilities, and they did not even consult there

---

1. Defendant Christopher L. White was the Chairman of the Board, Chief Executive Officer, Chief Operating Officer, President and a Director of MAW at all time relevant to this litigation. (*Amended Complaint* ¶ 10).

own environmental experts. Nothing changed but [Coopers'] fee.

Paragraphs 200, 201, and 204 of the Amended Complaint contend that Coopers knew that MAW's financial calculations were deliberately inaccurate in estimating remaining landfill capacity, a major asset of the company. The Amended Complaint states:

> 200. The amortization, depreciation and accruals are spread over the usage of the landfill. For purposes of calculating the amount of the accruals, and amortizing the acquisition costs and construction costs associated with each facility, an assumption or accounting estimate was utilized that 100 cubic yards of permitted air space would be required to dispose of each 80 tons of waste delivered to the landfill.

> 201. . . . [B]ased on surveys and tonnage records contained in MAW's files, the actual conversion rates for each of MAW's projects ranged between 50 and 60 tons of waste per 100 cubic yards of permitted landfill space. Notwithstanding such knowledge, the Individual Defendants, and each of them, participated directly and indirectly in the preparation of financial statements which calculated amortization, deprecation and accruals based on an 80 percent conversion rate.

> 204. In addition, [Coopers] was aware that MAW intentionally and improperly used .8 ton/yard conversion factor, which resulted in material misrepresentations to MAW's financials.

Paragraph 206 of the Amended Complaint alleges that Coopers realized that MAW had used overly optimistic conversion rates, yet accepted the rate as true. The Amended Complaint states:

206. . . . [Coopers] had actual knowledge that MAW's financials reflected deliberately false conversion rates, which had the affect of materially overstating MAW's financials. At his deposition, Defendant Roberts [2] testified that [Coopers] had access to this and all other material, and that the 80 percent conversion rate was incorrect. [Coopers] was aware of the overly "aggressive" conversion factor for MAW's landfills, but accepted MAW's rate as true without inspecting any of the landfill sites, without testing the rates used ,by MAW, and without ever utilizing [Coopers'] own environmental and solid waste specialists. . . .

Taking the above-stated allegations as true, as the Court must, Plaintiff's Amended Complaint indicates that Coopers possessed a mental state embracing an intent to deceive, manipulate, or defraud that gives rise to a strong inference of recklessness. Thus, the Court cannot conclude beyond a doubt that Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Consequently, Plaintiffs have satisfied the necessary pleading standard and Defendants' Motion to Dismiss is denied.

**B.  Plaintiffs' State Claims of Professional Negligence and Misrepresentation**

Counts III and IV of Plaintiffs' Amended Complaint allege negligence and negligent misrepresentation in violation of the common law of Ohio. (*Amended Complaint* ¶¶ 296–307). Defendants claim that Plaintiffs have failed to state a claim on which relief can be granted. (*Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment*, at 1–5). Specifically, Defendants assert that, be-

---

**2.** At all relevant times, Defendant R. Jay Roberts was the Vice President for Landfill Operations of MAW and also a Director of MAW. (*Amended Complaint* ¶ 13).

cause Plaintiffs are members of the general investing public, they lack standing to assert these claims under Ohio law. (*Id.*).

■ At common law, courts refused to impose liability on accountants "in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corp. v. Touche*, 255 N.Y. 170, 179, 174 N.E. 441 (1931). Subsequent cases interpreted this decision to mean that only those in privity with accountants could ever hold them liable for professional negligence. *O'Connor v. Ludlam*, 92 F.2d 50, 53 (2nd Cir.1937). Recently, a number of courts, including the Ohio Supreme Court, have declined to employ a strict privity rule to bar third parties from recovery for accountants' professional negligence. *Haddon View Investment Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 156, 436 N.E.2d 212 (1982). *Haddon View* held that "an accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." *Id.* at 154, 436 N.E.2d 212. Consequently, in the instant case the Court must determine if Plaintiffs are members of a limited class whose reliance on Defendants' representations was specifically foreseen.

Initially, the Court notes that in their Amended Complaint, Plaintiffs do not allege that they are members of a "limited class." Instead, Plaintiffs claim that they are members of a class which consists of "[a]ll persons who purchased publicly-traded MAW common stock securities from March 29, 1994 ... through and including January 21, 1997...." (*Amended Complaint* ¶¶ 18, 20). Further, Plaintiffs contend that:

> The class is so numerous that joinder of all members is impracticable. There were nearly 28 million shares of MAW common stock issued and outstanding as of March 15, 1996, and several millions of shares traded on the "open-market" during the [relevant time] period in thousands of transactions. These shares were held by thousands of shareholders of record.

(*Id.* ¶ 19). Plaintiffs also claim that Defendants owe a duty to the "Class" to oversee and audit MAW's financial statements and to exercise reasonable care in its duty. (*Amended Complaint* ¶¶ 293, 297).

Accepting as true all Plaintiffs' factual allegations and permissible inferences therein, the Court concludes that Plaintiffs are not members of a limited class as that term has been interpreted by the Sixth Circuit and the Ohio Supreme Court. Instead Plaintiffs are "open-market" purchasers of MAW stock and they cannot bring a negligent misrepresentation claim against Defendant accountants under Ohio law. Consequently, Plaintiffs have not stated a claim for which the law provides relief and Defendants Motion to Dismiss Counts III and IV of Plaintiffs' Amended Complaint is granted.

## IV. CONCLUSION

In light of the foregoing, Defendants' Motion to Dismiss Count One of Plaintiffs' Amended Complaint is **DENIED** and Defendants' Motion to Dismiss Counts III and IV of Plaintiffs' Amended Complaint is **GRANTED**. (Doc. # 19). The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**