HADDON VIEW INVESTMENT CO. ET AL., APPELLANTS AND
CROSS-APPELLEES, *v.* COOPERS & LYBRAND, APPELLEE
AND CROSS-APPELLANT.

(No. 81-964—Decided June 16, 1982.)

*Manley, Jordan & Fischer Co., L.P.A., Mr. Robert E. Manley, Mr. Joseph R. Jordan* and *Mr. Jeffrey J. Harmon,* for appellants and cross-appellees.

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. David S. Cupps,* for appellee and cross-appellant.

CLIFFORD F. BROWN, J.  The issue raised by plaintiffs-appellants is whether an accountant retained by a limited partnership to perform auditing and other services may be held responsible to an identifiable group of limited partners in such partnership for negligence in execution of those professional services.

This court has never determined whether an accountant can be held liable to the limited partners in a partnership for which accounting services are performed. The leading case on common law liability is *Ultramares Corp.* v. *Touche, Niven & Co.* (1931), 255 N.Y. 170, 174 N.E. 441, authored by Judge Benjamin Cardozo. In a carefully worded opinion, the New York Court of Appeals refused to impose liability on accountants "in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares, supra,* at 179. Subsequent cases interpreted this decision to mean that only those in privity with accountants could ever hold them liable for professional negligence. *O'Connor* v. *Ludlam* (C.A. 2, 1937), 92 F. 2d 50, 53, certiorari denied, 302 U. S. 758 (applying New York case law).

More recently, however, a growing number of courts have

declined to employ a strict privity rule to bar third parties from recovery for accountants' professional negligence. These cases, emphasizing the language in *Ultramares* quoted above, allow recovery by a foreseen plaintiff, or one who is a member of a limited class whose reliance on the accountant's representation is specifically foreseen. See, *e.g., Bonhiver* v. *Graff* (1976), 311 Minn. 111, 128, 248 N.W. 2d 291; *Hochfelder* v. *Ernst & Ernst* (C.A. 7, 1974), 503 F. 2d 1100, 1107, reversed on other grounds, 425 U. S. 185. Significantly, the strict interpretation of *Ultramares* has now been rejected by the court which formulated the rule, in *White* v. *Guarente* (1977), 43 N. Y. 2d 356, 372 N.E. 2d 315. That case holds, at pages 361-362, in relevant part:

"[T]he import of *Ultramares* is its holding that an accountant need not respond in negligence to those in the extensive and indeterminable investing public-at-large.

"Here, the services of the accountant were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components * * * . In such circumstances, assumption of the task of auditing and preparing the returns was the assumption of a duty to audit and prepare carefully for the benefit of those in the fixed, definable and contemplated group whose conduct was to be governed since, given the contract and the relation, the duty is imposed by law and it is not necessary to state the duty in terms of contract or privity * * * ."

We find the interpretation of *Ultramares* set forth in *White* v. *Guarente* to accord with reason and justice. Moreover, the Restatement of Torts 2d[1] and various commentators have come to the same conclusion. See, *e.g.,* Mess, Ac-

---

[1] 3 Restatement of Torts 2d, 126-127 Section 552, provides in relevant part:

"(1) One who * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) * * * [T]he liability stated in Subsection (1) is limited to loss suffered

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."

countants and the Common Law: Liability to Third Parties, 52 Notre Dame Lawyer 838, 857. We reject an application of *Ultramares* that bars recovery to the innocent third party who foreseeably relies on an accountant's reports. To require a plaintiff in such a situation to be in privity with the defendant-accountant ignores the modern verity that accountants make reports on which people other than their clients foreseeably rely in the ordinary course of business. This being the case, the accountant's duty to prepare reports using generally accepted accounting principles extends to any third person to whom they understand the reports will be shown for business purposes. "An accountant should be liable in negligence for careless financial misrepresentations relied upon by actually foreseen and limited classes of persons." *Rusch Factors, Inc.*, v. *Levin* (D.R.I., 1968), 284 F. Supp. 85, 93.

Accordingly, we hold that an accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen.

Applying this rule to the facts of the instant case, we conclude that the limited partners in the Car Wash partnerships constitute a limited class of investors whose reliance on the accountant's certified audits for purposes of investment strategy was specifically foreseen by defendant. Therefore, plaintiffs were proper parties to bring suit against defendant for professional negligence in the performance of its accounting function. The appellate court erred in affirming the trial court's dismissal of the complaint for failure to state a claim on which relief could be granted.

In reaching this conclusion, we find inapplicable Ohio's statute rendering a limited partner not a proper party to an action against a partnership. R. C. 1781.26.[2] That statute addresses only the situation in which a limited partner is named as a party in a suit against or one brought by the partnership. Here, however, the limited partners bring the suit in their own names not against the partnership, but against one in a con-

---

[2] R. C. 1781.26 provides:

"A limited partner, unless he is also a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership."

tractual relationship with the partnership. Given the partnership's failure to press its claim, if any, against defendant, and the financial loss suffered by plaintiffs, it is reasonable to permit that claim to be pursued by the innocent third parties who suffered a loss by their foreseeable reliance on the allegedly negligent acts of defendant. R. C. 1781.26 does not prevent such a just result.

The issue raised on cross-appeal by defendant Coopers & Lybrand is whether plaintiffs failed to state in their amended complaint the circumstances constituting fraud with sufficient particularity. As a preliminary matter, there is no question that privity is not required to assert a claim of common law fraud, out of a concern that an innocent party should not suffer at the hands of an intentional wrongdoer. *Ultramares, supra.* Nor is any intention to induce reliance required, a standard more lenient than that we adopt today for professional negligence claims. See 3 Restatement of Torts 2d 66, Section 531.

However, under Civ. R. 9 (B), "the circumstances constituting fraud * * * shall be stated with particularity" in a claim of fraud. We recognize the importance of stating with particularity such claims against accountants, as did the District Court for the Southern District of New York in *Rich* v. *Touche, Ross & Co.* (1975), 68 F.R.D. 243, at page 245:

"The requirement that allegations of fraud be pleaded with particularity stems from, among other sources, a concern that potential defendants be shielded from lightly made public claims or accusations charging the commission of acts or neglect of duty which may be said to involve moral turpitude. * * * The need for this protection is most acute where the potential defendants are professionals whose reputations in their field of expertise are most sensitive to slander." (Citation omitted.)

An examination of the allegations of fraud contained in plaintiffs' amended complaint[3] reveals that plaintiffs primarily

---

[3] The relevant portions of plaintiffs' amended complaint contain the following averments:

"36. With intent to mislead Plaintiffs and other investors to cause them to invest in the Car Washes to provide capital for their client Minit Man, Defendant willfully and intentionally misstated or concealed material facts.

assert fraud based on misstatements and omission of information from the financial statements on which the limited partners relied for investment purposes. To the extent it was possible, we believe plaintiffs stated with particularity the misstatements and omissions alleged to constitute fraud. Defendant was sufficiently apprised of the specific claims to be required to answer. Accordingly, we conclude the appellate court was correct to reverse the trial court's dismissal of the fraud claim.

Accordingly, the judgment of the Court of Appeals is reversed in part and affirmed in part.

"37. Some of the material facts known to Defendants but either misstated or omitted from the financial statements of Car Washes 1 and 2 were:

"a. That the formation of the Car Wash partnerships was part of a premeditated plan by Minit Man and related persons to finance Minit Man and to enrich its principals and others;

"b. That transactions between Car Washes 1 and 2 and Minit Man were executed by certain partners of Car Washes 1 and 2 who had conflicts of interest and who did not deal on an arm's-length basis, to the detriment of Car Washes 1 and 2;

"c. That the financial condition of Car Washes 1 and 2 was wholly dependent on the financial condition of Minit Man;

"d. That Minit Man at all times had an unsound financial condition and was insolvent;

"e. That the investments in Minit Man by Car Washes 1 and 2 were over-valued on the books of Car Washes 1 and 2;

"f. That the original offering documents used at the time of the Plaintiffs' initial investments in Car Washes 1 and 2 communicated false information from financial statements of Minit Man that the Defendant accountants had previously prepared, which statements overstated the value of the assets and the income of Minit Man.

"38. Defendant willfully and intentionally concealed from Plaintiffs, during the years 1973 through 1976 particularly:

"a. That the financial condition of Minit Man was poor and that the investments of Car Washes 1 and 2 in them were unsound;

"b. That conflicts of interests and self-dealing were going on between Minit Man and related persons and businesses to the financial detriment of the investors in Car Washes 1 and 2; and

"c. That the investments made by Plaintiffs in Car Washes 1 and 2 constituted sales of securities to Plaintiffs in violation of Section 12 of the Securities Act of 1933, 15 U.S.C. Section 77*l*, giving them the right to rescind within three years of the original purchase date of their limited partnership shares.

"39. In making the decision to initially invest in Car Washes 1 and 2, to subsequently reinvest, to guarantee the notes and to pass the opportunity to sue, Plaintiffs or those advising Plaintiffs relied upon the completeness, accuracy and truthfulness of the statements by Defendant Coopers & Lybrand.

"40. Defendant had reason to know or bvelieve [*sic*] that the statements they prepared would be used and relied upon by this Defendant [*sic*]."

*Judgment reversed in part and
affirmed in part.*

KEEFE, SWEENEY and LOCHER, JJ., concur.

HOLMES, J., concurs in the syllabus and that part of the opinion relating to the appeal.

W. BROWN, Acting C. J., concurs in the syllabus.

KRUPANSKY, J., dissents.

KEEFE, J., of the First Appellate District, sitting for CELEBREZZE, C. J.

KRUPANSKY, J., dissenting. In abandoning the doctrine of privity the majority's decision needlessly extends the limits of accountants' liability and leaves the accountant open to unlimited and indefinite liability to third parties. I, therefore, respectfully dissent.

The majority states:

"[W]e hold that an accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is *specifically foreseen.*

"Applying this rule to the *facts* of the instant case, we conclude that the limited partners in the Car Wash partnerships constitute a limited class of investors whose *reliance* on the accountant's certified audits *for purposes of investment strategy was specifically foreseen by defendant."* (Emphasis added.)

It must be remembered this court is reviewing the trial court's grant of a motion to dismiss. As such, the only "facts" before this court are those alleged in the amended complaint. See *e.g., Toms* v. *Delta Savings & Loan Assn.* (1955), 162 Ohio St. 513. Conspicuously absent from plaintiffs' amended complaint are any allegations which would lead to the conclusion that plaintiffs' reliance on defendant's work for purposes of investment stategy was specifically foreseen by defendant. There is no allegation to the effect that defendant intended the information to be used by plaintiffs in their investment decision nor that defendant knew plaintiffs would rely on the information for such a purpose. The implicit holding in the majority opinion is that limited partners fall within the category of the

specifically foreseen simply by virtue of their status as limited partners. The rule that emerges is the accountant who is hired by the partnership is liable to all limited partners who happen to rely on the accountant's work for any of a myriad of purposes. In my view, this rule is too broad and ignores the realities of the accountant-client relationship.

In the typical accountant-client contractual relationship, the client, not third parties, exercises control over what work is to be done and the purposes for which it is to be used. The accountant intends to supply the information to the client for the client's benefit and not for the benefit of third parties who are not in privity with the accountant. Since it is the client who controls the work and for whose benefit the work is performed by the accountant, the accountant should be held legally responsible only to the client for any errors in the work. The majority's decision forms the foundation for holding the accountant liable to *any* reliant third party. This in effect gives a free ride to non-paying parties. I would hold that parties not in privity with the accountant rely on his work at their own peril.

To extend liability to third persons not in privity with the accountant places an enormous burden on the accounting profession which is not justified by a countervailing increase in public benefit. As one commentator noted:

"The benefit to society from the numerous audits performed without error outweighs the benefits to society derived from extension of liability for the infrequent audit which may be negligent, an extension which has the potential to financially destroy an accounting firm because of one negligent audit." Note, Public Accountants and Attorneys: Negligence and the Third Party, 47 Notre Dame Lawyer 588, 604.

The expansion of accountants' duty, in the majority's words, "to any third person to whom they understand the reports will be shown for business purposes" is not warranted in light of the extreme hazards and immense potential liability which are thereby created for the accounting business. This extension of liability is particularly injurious to the smaller accounting firms which, under the pressure of expanded liability, will be less able to compete with the larger firms.

I would, therefore, affirm the judgment of the Court of Appeals.