PERPETUAL FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant,

v.

PORTER & PECK, INC., Appellee.

[Cite as *Perpetual Fed. S. & L. Assn. v. Porter
& Peck, Inc.* (1992), 80 Ohio App.3d 569.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1353.

Decided June 9, 1992.

*Chester, Hoffman, Willcox & Saxbe, Charles R. Saxbe* and *John J. Chester, Jr.,* for appellant.

*Lane, Alton & Horst, James K. Reuss* and *Mary McWilliams Dengler,* for appellee.

PEGGY BRYANT, Judge.

Plaintiff-appellant, Perpetual Federal Savings and Loan Association, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Porter & Peck, Inc.

As of March 16, 1987, defendant prepared an appraisal report for Helpbringer Mortgage Services ("Helpbringer"), mortgage broker for plaintiff,

regarding property at 165–167 Chittenden Avenue, in contemplation of plaintiff's lending money to Lowry for his purchase of the subject property. In appraising the property, defendant noted the following:

"Zoning classification AR4 Present improvements _×_ do ___ do not conform to zoning regulations"

Ultimately, plaintiff loaned money to Lowry to purchase the subject property. However, plaintiff later was notified that the property was not in compliance with the zoning code, as a prior owner had failed to obtain a certificate of zoning clearance at the time the building's conversion from four units to six units was completed.

Accordingly, on May 18, 1990, plaintiff filed the complaint herein, asserting that defendant negligently misrepresented the subject property's compliance with the applicable zoning regulations and that, as a result of defendant's misrepresentations, plaintiff had sustained damages.

Defendant ultimately responded with a motion for summary judgment, which the trial court granted. Plaintiff appeals therefrom, assigning three errors:

"I. The trial court erred in granting defendant's summary judgment because there were genuine issues as to material facts.

"II. The trial court erred in granting defendant's summary judgment because Porter & Peck's conduct constituted a negligent misrepresentation in violation of Ohio law.

"III. The trial court erred in granting defendant's summary judgment because the contingent and limiting conditions of the appraisal report prepared by Porter & Peck are not a valid defense to plaintiff's claims."

Plaintiff's three assignments of error are interrelated and raise the following issues: (1) may defendant be held liable to plaintiff under a theory of negligent misrepresentation for its failure to act with reasonable competence with respect to the appraisal report on the subject property? and (2) did defendant negligently misrepresent some fact on its appraisal report?

Since those questions arise within the context of a summary judgment motion, in accordance with Civ.R. 56, the evidence must be construed in favor of the nonmoving party, and summary judgment will be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come but to one conclusion, which is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which the party bears the burden of production at trial. *Wing v. Anchor*

*Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (*Celotex v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

In *Haddon View Invest. Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212, the Ohio Supreme Court adopted and applied Restatement of the Law 2d, Torts (1965), Section 552, finding an accountant liable to one other than an immediate client for negligent misrepresentations in the course of the accountant's professional services. Section 552 states:

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."

■ While the Ohio Supreme Court has not determined whether Section 552 of the Restatement of Torts should apply to appraisers, courts outside Ohio have found appraisers liable for the negligent performance of their responsibilities even in the absence of privity. See *Costa v. Neimon* (1985), 123 Wis.2d 410, 366 N.W.2d 896; *Larsen v. United Fed. S. & L. Assn.* (Iowa 1981), 300 N.W.2d 281. Nor has defendant presented any viable reason for not applying that section to appraisers as well as to accountants. Given the Ohio Supreme Court's adoption of Section 552, defendant may be held liable for professional negligence when the party suing it "is a member of the limited class whose reliance on the [appraiser's] representation is specifically foreseen." *Haddon View Invest. Co., supra,* at syllabus.

Defendant nonetheless urges that plaintiff is not one of the limited group of persons for whose benefit and guidance the information was supplied or to whom Helpbringer intended to supply it. The record, however, at least in part, suggests the contrary.

■ Specifically, David Maddox, the actual appraiser on the subject property, testified in his deposition that the purpose of an appraisal is to establish a value for the subject property; that lending institutions rely on the appraisals, the appraisals being very important to them; that if the appraisals are not accurate and the lending institution relies on them, the institutions would be at some risk of losing money; and that he knew people were going to rely on his work and expect the information in the appraisal would be correct. Further, John Peck, defendant's president, understood that Helpbringer is a mortgage broker and that it solicits or originates mortgage loans for out-of-town investors or lending institutions, and that it "do[es] paperwork" and passes it on for approval of the lender or investor. Peck further understood that Helpbringer acts on behalf of someone who may be loaning money on the property, that someone else thus may be relying on defendant's appraisal, and that Helpbringer was acting as plaintiff's agent as a mortgage broker. As a result, Peck testified that he understood he had an obligation to anyone who ultimately has a legitimate right to utilize his company's report; that in the case of mortgage brokers, the broker's principals are entitled to rely on the report; and that plaintiff would be entitled to rely on defendant's appraisal performed for properties for which plaintiff was potentially lending money.

With that testimony, and all inferences being drawn in plaintiff's favor, the record reveals a genuine issue of material fact so as to preclude summary judgment for defendant with respect to both plaintiff's being within the limited group of persons for whose benefit the information was supplied, and plaintiff's reliance on the supplied information.

Hence, the remaining issue to be determined is whether the record presents genuine issues of material fact regarding defendant's alleged breach of duty in its representation that the subject property's improvements comply with zoning regulations.

Defendant argues that the representation means only that, since the area in which the property is located is zoned AR4, and since that zoning classification allows six unit dwellings, then the subject property, a six-unit dwelling, is within the guidelines of that zoning classification.

Plaintiff, however, urges that defendant represented not only that the property was located within the geographical areas zoned AR4, but also that the present improvements to the property meet the zoning regulations or the zoning code for the city of Columbus. As evidence that the property failed to meet those zoning regulations, plaintiff presented (1) a notice of zoning violation for the subject property, and (2) the affidavit of Michael T. Shannon, Administrator of the Development Regulation Division of the Development Department for the city of Columbus, who stated that no certificate of zoning

clearance has been issued for the subject property, making its use as a six-unit building illegal.

Defendant acknowledges that the AR4 zoning classification included a requirement of one thousand two hundred square feet of lot per apartment, and that the subject premises do not comply therewith. However, defendant further responds that no zoning regulation was violated with respect to the subject property, as a zoning variance was granted to a prior owner pursuant to Ordinance 208–82, passed September 19, 1983, to convert the building from four units to six units. Hence, defendant asserts only an administrative step remains to bring the building within the zoning regulations: the owner must procure a certificate of zoning clearance. Accordingly, defendant urges that no misrepresentation occurred, even under plaintiff's interpretation of the language in the appraisal report.

According to the city's zoning classification, both under current law as well as under the repealed sections applicable at the time of the subject property's conversion from four to six units, the AR4 classification included at least two elements: (1) an apartment building for five or more families, with (2) one thousand two hundred square feet of lot for each unit or family.

■ As noted, defendant urges that the statement that the property's subject improvements conform to regulations is a representation with respect to only the first of the two elements in an AR4 classification. However, nothing on the face of the appraisal report suggests such a limitation. While we agree with defendant that its statement does not include representations regarding compliance with building code requirements, the statement represents compliance with the basic elements of the AR4 zoning classification, absent some agreement between the parties to the contrary. Since the record reflects no such agreement, for purposes of defendant's summary judgment motion, the representation pertains to both the above-cited elements of the AR4 zoning classification.

The record is clear that the subject property does not comply with the requirement that AR4 property have one thousand two hundred square feet of lot per unit. Defendant's contention that a variance was granted to circumvent that requirement is supported by the attachment to its summary judgment motion. However, plaintiff's response to defendant's summary judgment motion indicates that the notice of zoning violation was issued for failure of the owner to obtain a certificate of zoning clearance, and that the certificate of zoning clearance, in itself a requirement for compliance with the zoning code, indicates that the proposed development or use of the subject property is in compliance with the zoning code or an applicable variance.

With all reasonable inferences drawn in plaintiff's favor, the record creates a genuine issue of material fact regarding the accuracy of defendant's representation that the subject property complies with the zoning regulations pertinent to the AR4 classification. Specifically, the variance suggests that the improvements are permissible. However, the absence of the certificate of zoning clearance plus the notice of zoning violation, at least to some extent, indicate the contrary, and thereby raise a question concerning the accuracy of defendant's representation.

We hasten to add, however, that the requirement of a certificate of zoning clearance herein may be a hypertechnical interpretation of the zoning code on the part of the city of Columbus with respect to the subject property: if the variance granted the prior owners permission to convert the building from four to six units, then conversion to six units would appear to comply with the variance. Further, to the extent a certificate of zoning violation is still attainable for the subject property, we question whether its absence and the technical violation resulting therefrom may be deemed the proximate cause of plaintiff's damages.

However, on this record we are unable to determine whether the notice of zoning violation is merely a technicality, and with all reasonable inferences drawn in plaintiff's favor, the record creates a genuine issue of material fact as to whether the subject property complies with applicable zoning code so as to be used as a six-unit dwelling. Hence, we sustain plaintiff's three assignments of error to the extent stated herein. The judgment of the trial court is reversed and this cause is remanded for further proceedings in accordance herewith.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG, P.J., and DESHLER, J., concur.