DECISION.
Plaintiffs-appellants Alvin and Rosemary Phelps ("the Phelpses") appeal from the trial court's entry of summary judgment in favor of defendants-appellees PNC Bank National Association ("PNC Bank") and John Westling Associates ("Westling").
The Phelpses raise six assignments of error relating to their claims for breach of contract, negligence, negligent misrepresentation, and damages. Because no genuine issues of material fact exist as to any of the Phelpses' claims, we hold that the entry of summary judgment in favor of PNC Bank and Westling was appropriate.
 I. Standard of Review
This court reviews the entry of summary judgment de novo on the basis of an independent review of the record.[2] A motion for summary judgment is properly granted if the trial court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion.[3]
The moving party "bears the burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims."[4] When the moving party discharges that burden, the nonmoving party then has a reciprocal burden to set forth "specific facts" by the means listed in Civ.R. 56(E) to show that a triable issue of fact exists.[5]
 II. Facts
With the evidence construed in the light most favorable to the Phelpses, the record shows the following facts: on August 30, 1996, the Phelpses executed and delivered a construction loan agreement ("agreement") to PNC Bank in exchange for a loan in the principal amount of $185,800 to finance the construction of their home. Pursuant to this agreement, PNC Bank agreed to disburse the loan proceeds according to a disbursement schedule attached to the agreement.[6]
Under the agreement, each application for disbursement of funds was supposed to be submitted on a form approved by PNC Bank, executed by the Phelpses, and supported by such evidence as PNC Bank required. The agreement also provided the following:
 each application for an advance shall be deemed a certification of borrower that as of the date of such application, all representations and warranties contained in the agreement are true and correct, and that borrower is in compliance with all the terms of the Agreement.
 The disbursement schedule further provided that, prior to the disbursement of any advance, "a qualified real estate appraiser will inspect the property and submit a written report to the Bank," and that "upon receipt of the appraiser's written report * * * a check will be issued in accordance with the Construction Loan Agreement."
Both the agreement and the disbursement schedule contained express limitations as to PNC Bank's obligations to the Phelpses. The disbursement schedule contained the following qualification:
 PNC Bank assumes no responsibility for the construction to be performed, its quality, or the compliance with the plans and specifications, and borrowers are advised that any inspections as to the progress of the work is for the benefit of PNC only, and that inspection reports by inspectors of PNC are not certifications of compliance by the contractor with the building specifications or of the quality of the work, nor are they intended as construction supervision.
 In addition, the agreement provided the following limitations on PNC Bank's obligations to the Phelpses:
 The making of any advance by [PNC Bank] shall not constitute or be interpreted as either (a) an approval or acceptance by [PNC Bank] of the work done through the date of the advance, or (b) a representation or indemnity by [PNC Bank] to any party against any deficiency or defect in the work or against any breach of any contract.
 Inspections and approvals of the plans and specifications, the improvements, the workmanship and materials used in the improvements, and the exercise of any other right of inspection, approval, or inquiry granted to [PNC Bank] in this agreement are acknowledged to be solely for the protection of [PNC Bank's] interests, and under no circumstances shall they be construed to impose any responsibility or liability of any nature whatsoever on [PNC Bank] to any party.
 Neither borrower * * * shall rely, or have any right to rely upon [PNC Bank's] determination of the appropriateness of any advance. No disbursement or approval by [PNC Bank] shall constitute a representation by [PNC Bank] as to the nature of the project, its construction, or its intended use for borrower or for any other person, nor shall it constitute an indemnity by [PNC Bank] to borrower or to any other person against any deficiency or defects in the project or against any breach of any contract.
 The agreement also contained an integration clause, which provided that the agreement "constitute[d] all the agreements between the parties relating to the project and supersede[d] all other prior or concurrent oral or written agreements or understandings relating" to the construction of the Phelpses' residence.
In October 1996, the Phelpses entered into a contract with J J Construction to build their home. Shortly thereafter, J J Construction commenced construction. Pursuant to the terms of the agreement and disbursement schedule with the Phelpses, PNC's agent, Lender's Services, Inc., hired Westling to perform an initial appraisal of the Phelpses' residence and subsequent inspections of the construction. When problems arose with the construction of the Phelpses' residence, the Phelpses sued PNC Bank and Westling for breach of contract, negligence, and misrepresentation. The Phelpses also sued J J Construction in a separate action for breach of contract, negligence, and breach of warranty.[7]
The main thrust of the Phelpses' claims was that, due to its negligence or breach of contract, PNC Bank had improperly disbursed loan monies to J J Construction, failed to review the work completed by J J Construction, and mishandled paperwork relating to their loan. The Phelpses also claimed that Westling had negligently performed inspections of their home and negligently misrepresented that their home's construction had been completed according to contract specifications, when much work remained. The Phelpses alleged that both PNC Bank's and Westling's misconduct had an adverse effect on the value of their mortgage and the size of their mortgage payments, as well as on their physical and emotional well-being. The trial court granted summary judgment for PNC Bank and Westling without an opinion or explanation. This timely appeal ensued.
 III. Trial Court's Review of the Summary-Judgment Materials
In their first assignment of error, the Phelpses argue that the trial court erred by failing to review their opposition to summary judgment and the supporting documentation prior to granting PNC Bank's and Westling's motions for summary judgment. We disagree for two reasons.
First, there is no evidence that the trial court failed to consider the Phelpses' evidentiary materials or their memorandum opposing summary judgment. The trial court clearly indicated in its entry granting PNC Bank summary judgment that it had considered "* * * PNC Bank's motion, all memoranda in support and contra, the pleadings, pertinent case law, and the oral arguments offered by each party * * *." Likewise, in its entry granting Westling's motion for summary judgment, the court indicated that it had considered Westling's motion for summary judgment, "* * * the memorandum in support, the opposition thereto, the arguments of counsel and the parties, the pleadings, and all other things properly before the Court * * *."
Second, even after construing the Phelpses' memorandum in opposition and the supporting evidentiary materials in a light most favorable to them, as the nonmoving parties, we are unconvinced that a genuine issue of material fact existed as to any of their claims. As a result, we overrule the Phelpses' first assignment of error.
 IV. Breach-of-Contract Claim against PNC Bank
In their second assignment of error, the Phelpses argue that the trial court erred in granting summary judgment to PNC Bank on their breach-of-contract claim. The Phelpses contend that PNC Bank breached its duty to properly disburse the funds from their construction loan. In response, PNC Bank argues that it complied with the clear and unambiguous terms of the contract. We agree with PNC Bank.
Ohio courts have long held that the "construction of written contracts * * * is a matter of law"[8] that courts review de novo.[9] Courts examine a contract "to ascertain and give effect to the intent of the parties" as contained in the contract's language.[10] If a contract is not ambiguous, "a court must give effect to the parties" expressed intentions; unexpressed intentions are deemed to have no existence.[11]
No party disputes that PNC Bank's duties in disbursing the construction loan funds were expressly delineated in the contract. Under the agreement and disbursement schedule, PNC Bank was not required to disburse funds until it had received an application for disbursement of funds bearing the Phelpses' signature and a written report from the real-estate appraiser.
The Phelpses do not argue that PNC Bank failed to comply with these terms. Nor do they argue that PNC Bank failed to receive the appraiser's written reports prior to disbursing funds. They instead appear to argue that PNC Bank breached the agreement by failing to review the builder's work prior to disbursing funds. But, by the very terms of the agreement, PNC Bank had no such duty.
The agreement expressly provided that any inspections performed by an appraiser prior to the disbursement of funds was for the protection of PNC Bank's interests as a lender and not for the benefit of the Phelps. Further, the inspections did not constitute a certification by PNC Bank as to the quality of the builder's work or the builder's compliance with building specifications. The agreement further provided that PNC Bank would not assume responsibility for supervising the builder, overseeing the builder's work, or enforcing the terms of the Phelpses' construction contract with the builder. Because reasonable minds could not conclude that PNC Bank had breached its duty in disbursing funds under the agreement, the trial court did not err by granting summary judgment as to this claim. We, therefore, overrule the Phelpses' second assignment of error.
 V. Negligence Claim against PNC Bank
In their third and fourth assignments of error, the Phelpses argue that the trial court erred in granting PNC Bank summary judgment on their negligence claim. In their third assignment of error, they argue that genuine issues of material fact exist as to whether PNC Bank was grossly negligent in disbursing funds from the construction loan based upon the incorrect report of Westling.[12] The Phelpses further argue that they relied on PNC Bank's expertise in evaluating the progress of the work and in deciding whether to make a disbursement. In their fourth assignment of error, the Phelpses additionally argue that PNC was negligent in failing to review the work completed by J J Construction, failing to provide them with a timely good-faith estimate,[13] and mishandling their loan paperwork. In response, PNC Bank argues that its contract with the Phelpses precluded their negligence claim.
In order to recover on a negligence claim, a plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury.[14] The existence of a duty is fundamental to establishing actionable negligence because if there is no duty, then no legal liability for negligence can arise.[15] The existence of a duty is a question of law.[16]
Under Ohio law, a lender's liability for improper disbursements is limited to instances of gross negligence or fraud.[17] Gross negligence is defined as the "failure to exercise any or very slight care" or "a failure to exercise even that care which a careless person would use."[18] Accordingly, to survive PNC Bank's motion for summary judgment, the Phelpses were required to demonstrate gross negligence by the bank in disbursing the loan funds to J J Construction.
Based on the evidence, reasonable minds could not conclude that PNC Bank was grossly negligent or fraudulent in disbursing the loan funds. First, the agreement and disbursement schedule provided that the Phelpses were responsible for requesting loan disbursements from PNC Bank. So it appears that the Phelpses, not PNC Bank, were responsible for supervising the builder's work and verifying that construction was being completed in accordance with the plans and specifications prior to submitting any requests for disbursements. While the Phelpses have argued that PNC Bank's use of an inspector caused them to believe that the bank would ensure that the work was proceeding properly, this assumption is not supported by the express language in the agreement and disbursement schedule. In fact, the agreement and disbursement schedule stated just the opposite; they contained express limitations as to PNC Bank's responsibilities in disbursing funds to the Phelpses and their builder. We, therefore, cannot conclude that PNC Bank was grossly negligent in disbursing construction funds to J J Construction. As a result, we overrule the Phelpses' third assignment of error.
In their fourth assignment of error, the Phelpses argue that PNC Bank was negligent in failing to review the work completed by J J Construction, failing to provide them with a timely "good faith" estimate, and mishandling their loan paperwork. As we have already stated, PNC Bank's standard of care to the Phelps was expressly delineated under the loan agreement; and it is undisputed that PNC fulfilled its duty under the agreement when disbursing the loan funds. Because PNC owed the Phelpses no duty to supervise the construction of their home or inspect the builder's work, the Phelpses have not shown that PNC Bank was negligent in failing to supervise or inspect the work of their builder.
Next the Phelpses appear to argue that PNC's failure to provide them with a timely "good faith" estimate of their settlement charges supported a cause of action for negligence. While Section 2604(c), Title 12, U.S. Code requires a lender to "include * * * a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the [real-estate] settlement * * *," federal courts have held that the statute does not provide for a private cause of action.[19] Therefore, reasonable minds could not conclude here that PNC Bank was negligent when it failed to timely provide the Phelpses with a "good faith" estimate of their settlement charges.
The Phelpses also argue that PNC Bank was negligent in handling their loan documents.[20] As support for their argument, the Phelpses rely upon two letters that they never signed a loan commitment letter and a letter relating to the withdrawal of loan funds — and an improperly notarized lien waiver. None of these documents created a genuine issue of material fact as to PNC Bank s negligence. In sum, we hold that the trial court did not err in granting PNC Bank's motion for summary judgment on the Phelpses' negligence claim. Thus, the Phelpses' fourth assignment of error is overruled.
 Negligent-Misrepresentation and Negligence Claims Against Westling
In their fifth assignment of error, the Phelpses argue that the trial court erred in granting summary judgment to Westling. The Phelpses contend that Westling failed to adequately perform the appraisal and inspection work, and that Westling negligently misrepresented to PNC Bank that the construction of their home was complete under contract specifications in September 1997.[21] The Phelpses rely on Haddon ViewInvestment Co. v. Coopers Lybrand[22] and Perpetual Federal Savings Loan Assn. v. Porter Peck[23] to support their position. We find both cases to be factually distinguishable from this case.
Negligent misrepresentation is defined in this manner:
 [one] who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[24]
In Haddon View Investment Co., the Ohio Supreme Court held an accountant liable to third parties for negligent misrepresentations in the course of the accountant's professional services. The court determined that, despite the parties' lack of contractual privity, the plaintiffs could state a claim for negligent misrepresentation if the accountant could have foreseen their reliance. In Perpetual Federal Loan Association, an appellate court held that genuine issues of material fact existed as to whether a bank was one of a limited group for whose benefit and guidance an appraiser's report was supplied, and whether the bank's reliance on the appraiser's representation could have been specifically foreseen.
The Phelpses appear to argue here they were in privity of contract with Westling because PNC Bank could have required them to reimburse the bank for Westling's services. Westling argues that this assertion fails because the Phelpses did not raise it in the trial court, and that, even so, no privity of contract existed between him and the Phelpses.
Regardless of whether the threshold requirement for privity was met in this case, the Phelpses could not recover for negligent misrepresentation, where justifiable reliance, a necessary element of the claim, was missing.[25] The Phelpses' claim differed from the plaintiffs' claims in Haddon View and Perpetual Federal, because there was no evidence that the Phelpses had justifiably relied on Westling's appraisals or inspections. In the agreement and disbursement schedule, the Phelpses expressly agreed that "any inspections as to the progress of the work is for the benefit of PNC only, and that inspection reports by inspectors of PNC are not certifications of compliance by the Contractor with the building specifications or of the quality of the work, nor are they intended as construction supervision." This language operated as a disclaimer putting the Phelpses on notice that that they could not rely on Westling's appraisals as an indication of the quality of the work done on their home.
Even without this language in their agreement with PNC Bank, the Phelpses did not demonstrate below that their reliance on Westling's appraisals was foreseeable. The Phelpses did not rely on Westling's appraisal to build their home or to take out a construction loan from PNC Bank. The Phelpses purchased the property for their home, obtained financing, and contracted with their builder, J J Construction, prior to any inspections being conducted by Westling. Thus, regardless of Westling's inspections, the Phelps would still have been bound by the loan agreement with PNC Bank and the construction contract with J J Construction. As a result, reasonable minds could not conclude that the Phelpses justifiably had relied on Westling's appraisals and inspections.
The Phelpses have also failed to provide sufficient evidence to defeat summary judgment on their negligence claim against Westling. The Phelpses appear to argue that their contract with PNC Bank established a duty between them and Westling, because the agreement permitted PNC to charge them for Westling's appraisals and inspections.
There is no evidence that PNC Bank actually required the Phelpses to reimburse it for Westling's services. The loan agreement provides,
 [I]f requested by [PNC Bank], borrower shall have furnished to [PNC Bank], at borrower's expense, an appraisal of the property prepared by an appraiser satisfactory to [PNC Bank] and in [a] form and substance satisfactory to [PNC Bank] in its sole discretion.
Thus, the agreement merely allowed PNC Bank to seek reimbursement. It did not call for the Phelpses to make unconditional payment for Westling's services. The undisputed facts also show that PNC Bank contracted with Lender's Services, Inc, who then hired Westling to perform the appraisal for PNC Bank. Thus, there is no evidence that the Phelpses actually hired Westling to perform the appraisals or inspections, or that they paid for Westling's services.
Even if the Phelpses had paid for Westling's appraisal, this would not have created a duty. In Tomb Associates v. Wagner, an appellate court held that a construction contractor could not state a negligence claim against an architect even though a contract between the landowner and the contractor obligated the contractor to pay for the architect' services.[26] The court determined that the contractor's obligation to pay for the architect's services did not establish privity between the parties. Absent privity between the parties, the court held, the contractor could not demonstrate that the architect owed it any duty.
We agree with the appellate court's reasoning in Tomb Associates. The mere fact that PNC Bank could seek reimbursal for Westling's appraisal did not create a duty between Westling and the Phelpses. Because the Phelpses did not present any evidence that Westling owed them a duty to perform an adequate appraisal, the trial court did not err in granting Westling summary judgment on their negligence claim. Accordingly, we overrule their fifth assignment of error.
 VI. Damages
In their sixth assignment of error, the Phelps argue that the trial court erred when it overlooked the financial and emotional damages caused by PNC Bank's and Westling's misconduct. Because no genuine issue of material fact existed as to any of the Phelpses' claims against PNC Bank and Westling, the Phelpses' sixth assignment of error regarding damages cannot be sustained.
 VII. Conclusion
No genuine issues of material fact exist as to the Phelpses' breach-of-contract, negligence, and negligent-misrepresentation claims. We, therefore, affirm the trial court's grant of summary judgment to PNC Bank and Westling.
 _____________________ Sundermann, Judge.
 Winkler, JJ. concurs.
Painter, P.J., concurs in judgment only.
[2] See Koos v. Central Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,641 N.E.2d 265.
[3] See Civ.R.56(C).
[4] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264,274.
[5] See id. at 293, 662 N.E.2d at 274; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.
[6] The Phelpses signed the disbursement schedule on August 30, 1996. By signing the disbursement schedule, the Phelpses acknowledged receipt of the document and their agreement to its terms.
[7] This case is currently pending before the Court of Common Pleas for Columbiana County.
[8] Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,374 N.E.2d 146, 148, paragraph one of syllabus. See, also, State ex rel.Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377,1379.
[9] See Wiltberger v. Davis (1996), 110 Ohio App.3d 46, 51,673 N.E.2d 628, 631.
[10] See Foster Wheeler Enviresponse v. Franklin Co. ConventionFacilities Authority (1997), 78 Ohio St.3d 353, 361,678 N.E.2d 519,526.
[11] United States Fid. Guar. Co. v. St. Elizabeth Med. Ctr. (1998), 129 Ohio App.3d 45, 55, 716 N.E.2d 1201, 1208.
[12] While the Phelpses' complaint alleged that PNC Bank was "negligent" in disbursing the loan funds, failing to supervise the builder's construction of their home, and mishandling loan paperwork, they have repeatedly argued that PNC was also "grossly negligent" in disbursing the loan funds. We, therefore, review both arguments.
[13] Although the Phelpses' brief does not denote which assignment of error addresses this argument, we believe it fits most logically within this assignment of error.
[14] See Chambers v. St. Mary's School (1998), 82 Ohio St.3d 563,565, 697 N.E.2d 198, 200.
[15] See Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614,616; Adelman v. Timman (1997), 117 Ohio App.3d 544, 549, 690 N.E.2d 1332,1335.
[16] See Mussivand v. David (1989), 45 Ohio St.3d 314, 318,544 N.E.2d 265, 270.
[17] R.C. 1311.011(B)(5).
[18] Thompson Electric, Inc. v. Bank One, Akron, N.A. (1988),37 Ohio St.3d 259, 265, 525 N.E.2d 761, 768, citing Johnson v. State
(1902), 66 Ohio St. 59, 67, 63 N.E. 607, 609; Prosser Keeton, Law of Torts (5 Ed. 1984) 212, Section 34.
[19] See Collinses v. FMHA-USDA (C.A.11, 1997), 105 F.3d 1366,1368.
[20] The Phelpses also argue that PNC Bank's actions in an unrelated case captioned Meiners v. PNC Bank, National Association, Hamilton C.P. No. A-98413, evidenced PNC's negligence in handling its customers' loan documents. We do not review this argument because it was not raised below. See Niemann v. Cooley (1994), 93 Ohio App.3d 81,637 N.E.2d 943.
[21] The Phelpses' complaint only alleged negligent misrepresentation against Westling. But they have repeatedly argued that Westling was also negligent in conducting the appraisals. Therefore, we address both of these arguments on appeal. But we do not believe that the Phelpses pleaded or argued a breach-of-contract claim against Westling.
[22] (1982), 70 Ohio St.2d 154, 436 N.E.2d 212.
[23] (1992), 80 Ohio App.3d 569, 609 N.E.2d 1324.
[24] Delman v. Cleveland Heights (1989), 41 Ohio St.3d 1, 4,534 N.E.2d 835, 838, quoting Restatement of the Law 2d, Torts (1965), 126-127, Section 552(1).
[25] See Foster Wheeler Enviresponse v. Franklin Co. ConventionFacilities Auth. (1997), 78 Ohio St.3d 353, 678 N.E.2d 519.
[26] (1992), 82 Ohio App.3d 363, 364, 612 N.E.2d 468, 469.