DECISION.
{¶ 1} In this appeal, we must determine whether a mortgage lender may recover economic losses from an appraiser, in the absence of privity of contract, under the theory of negligent misrepresentation. Under the facts of this case, we answer in the negative.
 {¶ 2} Plaintiff-appellant Trustcorp Mortgage Company purchased a set of residential housing loans from the Midas Mortgage Company. The defendants-appellees, Joseph Zajac, Jody F. Zajac, Zajac Appraisal Services, Inc., William M. Patrick, Jr., and Wm. Patrick Appraisers ("the appraisers"), appraised the property that served as collateral for these loans, including the ten properties that are at issue in this appeal. The appraisers had been hired by three mortgage broker/originator companies, Premier Service Mortgage, Charter First Banc, and T.R. Funding, to perform the appraisals. Midas apparently obtained the loans from these three companies and sold them to Trustcorp, who ultimately funded the loans at closing. None of the appraisers directly contracted with or even knew that Midas or Trustcorp would ultimately receive their appraisal reports.
 {¶ 3} Midas not only sold the loans to Trustcorp, but it also performed the underwriting analysis under a separate contract in which it agreed that it was not an agent for Trustcorp, but an independent contractor. By approving the underwriting of the loans, Midas warranted that the appraisals were accurate.
 {¶ 4} The mortgagors of each of the ten properties at issue defaulted on the Trustcorp loans. Trustcorp requested that Midas repurchase the loans in accordance with the underwriting agreement and a buy-sell agreement. Midas refused.
 {¶ 5} Trustcorp then foreclosed on the mortgages and sold the properties for less than the appraised values. Trustcorp hired its own appraiser, who stated that, in his opinion, the values set by the appraisers were inflated and not reasonable or justified.
 {¶ 6} Trustcorp successfully sued Midas for breach of contract, but Midas filed for bankruptcy, thwarting Trustcorp's recovery on the judgment. Trustcorp then filed this separate lawsuit, naming various parties as defendants and setting forth multiple causes of action. Trustcorp asserted four causes of action against the appraisers, including constructive fraud, theft by deception, fraud, and negligent misrepresentation. In the negligent-misrepresentation claim, Trustcorp sought only economic losses as damages.
 {¶ 7} After the appraisers moved for summary judgment, Trustcorp dismissed with prejudice the non-negligence causes of action against the appraisers. The trial court granted summary judgment in favor of the appraisers on the negligence claim and certified the judgment with the requisite Civ.R. 54(B) language.
 {¶ 8} On appeal, Trustcorp challenges the trial court's entry of summary judgment in favor of the appraisers. We review a summary judgment de novo, applying the standards set out in Civ.R. 56.[2]
 {¶ 9} In their motions for summary judgment, the appraisers argued that because they had never contracted with Trustcorp, Trustcorp could not, as a matter of law, recover against them for economic-loss damages.
 {¶ 10} In opposition, Trustcorp argued that in Ohio a plaintiff can recover for economic losses in tort where the facts establish a negligent-misrepresentation claim as defined by Restatement of the Law 2d, Torts (1977), Section 552.
 Economic-Loss Rule {¶ 11} Typically a plaintiff must have a contractual relationship with the defendant to recover damages for economic loss, also called pecuniary loss.[3] Conversely, to recover for physical harm caused by the negligence of another, a plaintiff does not need to have a contractual relationship with the defendant, even if the defendant is a manufacturer or a service provider.[4]
 {¶ 12} The Ohio Supreme Court in Corporex Dev. Constr. Mgt. Inc. v.Shook, Inc.[5] recently explained the "economic-loss rule" and the history behind it. As the Corporex court noted, "The economic-loss rule generally prevents recovery in tort of damages for purely economic loss. * * * `[A] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.' This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that `parties to a commercial transaction should remain free to govern their own affairs.' `Tort law is not designed * * * to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation * * * remains the particular province of the law of contracts.' "[6]
 {¶ 13} But the Ohio Supreme Court has not been consistent in following the economic-loss rule in the area of professional malpractice. InHaddon View Investment Co. v. Coopers Lybrand,[7] the court held that an accountant could be liable in tort for economic losses caused by a negligent representation made while rendering professional services, even in the absence of privity of contract. The Haddon View plaintiffs had not contracted with the accountant for the professional services.[8] But the four plaintiffs were individual, limited partners of the accountant's client, the partnership.[9] These plaintiffs had lost money when the partnership collapsed.[10] The court applied a strictly tort-based test to determine to whom the accountant owed a duty of care. In doing so, the court was guided by Restatement of the Law 2d, Torts, Section 552.
 Section 552 of the Restatement 2d of Torts {¶ 14} This section, titled "Information Negligently Supplied for the Guidance of Others," allows for the recovery of economic losses in tort when the follow conditions are established:
 {¶ 15} "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 {¶ 16} "(2) * * * [T]he liability stated in Subsection (1) is limited to the loss suffered
 {¶ 17} "(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
 {¶ 18} "(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. * * *"[11]
 {¶ 19} The Haddon View court discussed the liability of an accountant for professional negligence against the backdrop of this duty set out in the Restatement. Recognizing the "modern verity" that accountants make reports that persons other than their clients reply upon "in the ordinary course of business,"[12] the court held that "[a]n accountant may be held liable to a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen."[13]
 {¶ 20} In a later case, the Ohio Supreme Court referred to the duty that created the liability for purely economic loss in Haddon View as a "discrete, preexisting duty in tort" and a "generally recognized dut[y] in tort."[14] In doing so, the court distinguished this tort duty from a duty negotiated for in a contract between the parties that might provide liability for purely economic loss.
 {¶ 21} Despite recognizing a Section-552-like duty in the accounting profession, the court has declined to recognize tort-based economic-loss claims for malpractice in other professions in the absence of privity. For example, in Floor Craft Floor Covering, Inc. v. Parma CommunityGeneral Hospital Assn.,[15] the court rejected similar liability for design professionals.
 {¶ 22} The plaintiff in Floor Craft, a flooring-installation contractor hired by a hospital, sought to recover in tort for economic losses caused by the negligence of an architect who had provided inaccurate specifications to the hospital for the floor-installation project.[16] The Floor Craft court stated that "applying the Restatement in this context [would] encompass liability that is otherwise best suited for contract negotiation and assignment."[17]
The practical result of this holding is that a hospital and a flooring company must negotiate the issue of damages in the event that the architect provides incorrect specifications, and the hospital and the architect must separately negotiate their respective liabilities in the event that the specifications are incorrect. And the parties should provide for an assignment mechanism in these contracts.
 {¶ 23} The Ohio Supreme Court has not addressed whether a strictly tortbased liability would apply to appraisers. Several appellate courts in Ohio have held that a tort-based liability for economic damages can apply to an appraiser who provides an inaccurate appraisal to a lender[18] or a purchaser,[19] despite the absence of privity of contract between the parties.
 {¶ 24} In Perpetual Federal Savings Loan Assn. v. Porter Peck,Inc., the Tenth Appellate District held that an appraiser of real property could be liable in tort for economic damages to a lending institution.[20] The lender had not contracted for the appraisal report but had received it from a mortgage broker who had.[21] The appraiser had negligently misrepresented the appraised property's compliance with the applicable zoning regulations.[22] The lender allegedly relied on the appraiser's representation in deciding to lend money to a purchaser of the property.[23]
 {¶ 25} The appraiser in Perpetual argued that the lender was not a plaintiff contemplated by Section 552: a person or one of a limited group of persons for whose benefit and guidance the appraiser intended to supply the information or knew that the recipient intended to supply it.[24] But the court found that the record contained evidence suggesting that the appraiser knew that the mortgage broker was only acting as the agent of the ultimate lender and that the ultimate lender would rely on the appraisal.[25]
 {¶ 26} Based upon this evidence, the Perpetual court reversed the summary judgment in favor of the appraiser, holding that genuine issues of fact remained as to whether the lender was in "the limited group of persons for whose benefit the information was supplied" and whether the lender had justifiably "relied on the supplied information."[26]
 {¶ 27} The facts in our case are somewhat similar to those before the court in Perpetual. As in Perpetual, the record contains facts to support a finding that the appraisers knew that the appraisal reports would be relied upon by parties other than Premier, Charter First, or T.R. Funding, the mortgage brokers/originators that had employed the appraisers' professional services.
 {¶ 28} For example, Trustcorp presented deposition testimony from the appraisers indicating that they understood the industry practices that a mortgage broker would originate a loan for the ultimate lender and that the ultimate lender might rely upon the appraisal report. Trustcorp also cited to standard language found in the appraisal reports that supported this conclusion. This language allowed the named client on a report to distribute the report to "the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Colombia; * * *" without first obtaining the written consent of the appraiser.
 {¶ 29} But there is a greater degree of separation between the parties in this case than in Perpetual. This renders the connection between the appraisers and Trustcorp more attenuated than that between the appraiser and the mortgage broker and the mortgage lender in Perpetual. Trustcorp had obtained the appraisal report from Midas, who had obtained it from Premier, Charter First Banc, or T.R. Funding, who had obtained it from the appraisers. This attenuation made Trustcorp a less foreseeable plaintiff.
 {¶ 30} And Midas had actually altered almost all of the reports before turning them over to Trustcorp in an underwriting package. Midas's alterations ranged from total fabrication of the appraised values to merely substituting its name for Premier, Charter First, or T.R. Funding on the page identifying the client of a particular report. Admittedly only the reports with the non-material changes are at issue on appeal. But the fact that Midas had the opportunity to alter these reports, even in a non-material way, concerns us. Neither Trustcorp nor the appraisers were aware of these alterations until discovery was conducted in this case. The appraisers had disclaimed liability in the event of an alteration.
 {¶ 31} Although the appraisers in this case knew that Premier, Charter First, and T.R. Funding would likely pass along their appraisal reports to an ultimate lender such as Trustcorp, they did not know that Trustcorp would be that ultimate lender. In fact, the appraisers did not know that either Midas or Trustcorp had been provided with the appraisal reports until Trustcorp sued them.
 {¶ 32} This case is also distinguishable from Haddon View. Obviously the cases involve different professions: appraising and accounting. The appraising process requires more subjectivity than the accounting process. The supreme court has never held that appraisers owe the same duty of care to third parties as accountants do. The custom in the mortgage business of passing on appraisal reports does not, by itself, create a duty of care. Generally a trade custom imposes no duty on anyone unless it is part of a contract,[27] and Trustcorp is not arguing that the appraisers had a contractually assumed duty of care to provide it with accurate appraisals.
 {¶ 33} Additionally, the cases involve different classes of plaintiffs. The court in Haddon View could easily characterize its plaintiffs as "a limited class of investors whose reliance on the accountant's certified audits for purposes of investment strategy was specifically foreseen by the defendant."[28] The plaintiffs were part owners of the partnership that had employed the accounting firm for several years prior to the malpractice. Conversely, Trustcorp in this case was one of many lenders, mortgage brokers, or borrowers that might have relied upon the appraisal reports, and the record does not reflect that the appraisers had prior dealings with Trustcorp.
 {¶ 34} A less obvious distinction between the two cases is based upon the contractual remedies available to the plaintiffs. In this case, Trustcorp had two contracts with Midas that required Midas to buy back loans that contained fraudulent statements, inaccuracies, or misrepresentations, including the overvaluing of the property in an appraisal. Trustcorp designed these provisions to limit its risk of economic loss. Conversely, the Haddon View court did not identify any contractual remedy the limited partners might have had against the partnership in the event that the accounting report procured by the partnership contained a misrepresentation. We make this distinction because the Ohio Supreme Court has repeatedly said that "recovery for economic loss is strictly a subject for contract negotiation and assignment."[29]
 {¶ 35} As noted by the appraisers in their brief, this court has interpreted the holding in Haddon View narrowly, and we have exercised restraint in expanding tort-based economic-loss liability to professionals other than accountants.[30]
 {¶ 36} After reviewing the history of the economic-loss rule and the unique facts of this case, we hold that, in the absence of privity of contract, the appraisers were entitled to judgment as a matter of law on the negligentmis representation claim. Accordingly, we overrule the assignment of error and affirm the judgment of the trial court.
[2] Doe v. Schaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186,738 N.E.2d 1243.
[3] See Floor Craft Floor Covering, Inc. v. Parma Community GeneralHospital Assn. (1990), 54 Ohio St.3d 1, 8, 560 N.E.2d 206.
[4] See Rogers v. Toni Home Permanent Co. (1958), 167 Ohio St. 244,147 N.E.2d 612.
[5] 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701.
[6] Corporex at ¶ 6 (internal citations omitted).
[7] (1982), 70 Ohio St.2d 154, 436 N.E.2d 212.
[8] Id. at 155.
[9] Id. at 154-155.
[10] Id.
[11] Restatement of the Law 2d, Torts (1977), Section 552.
[12] Haddon View, 106 Ohio St.3d at 157.
[13] Id. at paragraph one of the syllabus.
[14] Corporex, 2005-Ohio-5409. at ¶ 9 and 10.
[15] (1990), 54 Ohio St.3d 1, 560 N.E.2d 206.
[16] Id. at 1.
[17] Id. at 7.
[18] Perpetual Federal Savings Loan Assn. v. Porter Peck,Inc. (1992), 80 Ohio App.3d 569,609 N.E.2d 1324.
[19] Washington Mut. Bank v. Smith, 11th Dist. No. 2001-L-238, 2002-Ohio-6910 ("an appraiser preparing a report for a lending institution should foresee that the purchaser of the property listed on the appraisal form could be within the limited class of persons who would rely on the appraisal"). Compare Hancock v. Sigg (Sept. 1, 1995), 6th Dist. No. WM-95-010 (sellers of home were not among the limited class of persons whose reliance on an appraiser's valuation of a property could be specifically foreseen).
[20] (1992), 80 Ohio App.3d 3d 569, 609 N.E.2d 1324.
[21] Id. at 570.
[22] Id.
[23] Id.
[24] Id. at 572.
[25] Id. at 573.
[26] Id.
[27] See Thomas v. Guarantee Title and Trust Co. (1910),81 Ohio St. 432, 91 N.E. 183, paragraphs one and two of the syllabus (declining to allow the recovery of economic losses against a title examiner for malpractice in the absence of contractual privity).
[28] Haddon View, 70 Ohio St.2d at 157.
[29] Floor Craft, 54 Ohio St.3d at 8. See, also, Corporex,2005-Ohio-5409, at ¶ 10.
[30] See Amann v. Clear Channel Communications, Inc.,165 Ohio App.3d 291, 2006-Ohio-714, 846 N.E.2d 95 (declining to extend liability for negligent misrepresentation where a member of a radio station's listening audience detrimentally relied upon an allegedly fraudulent investment scheme advertised on the station's airwaves); Kenney v. HenryFischer Builder, Inc. (1998), 129 Ohio App.3d 27, 716 N.E.2d 1189
(holding that privity of contract is required to recover for the malpractice of a title examiner, but urging the supreme court to adopt Restatement of the Law 2d, Torts, Section 552).
Judgment affirmed.
GORMAN, P.J., concurs.
PAINTER, J., dissents.
RALPH WINKLER, retired, of the First Appellate District, sitting by assignment.