DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Sandusky County Court of Common Pleas, journalized on May 7, 2007, that granted appellees' motions for summary *Page 2 
judgment. The litigation is a civil action for damages arising out of claimed contamination to groundwater.
 {¶ 2} Appellants are all either property owners or residents of property located in the area of County Road 302 and US 20, Bellevue, Ohio. Their properties are located near a hospital facility constructed by Bellevue Hospital. Construction began in 2003. Appellants claim they have been damaged by construction of the facility and, particularly, by construction of Class V injection wells there. Bellevue Hospital constructed the injection wells to provide storm water drainage to the facility.
 {¶ 3} Following completion of the injection wells, appellants reported continuing problems with their well water. Depending on location, the water problems allegedly have included sand and silt in the water, intolerable odor in the water, and the water quality falling below minimum standards for use as drinking water. Appellants have claimed they have been unable to use their well water for many household tasks since construction of the injection wells. They claim these water problems have been caused by the hospital's injection wells.
 {¶ 4} Appellants originally filed suit against Bellevue Hospital and all appellees for damages allegedly associated with the hospital construction in the Sandusky County Court of Common Pleas in 2004. The case did not proceed to trial. Appellants settled their claims against Bellevue Hospital.
 {¶ 5} Appellants dismissed the claims against the other defendants (appellees herein), without prejudice, and reinstituted suit with the filing of a complaint in this *Page 3 
action on September 29, 2005. The demanded relief in this action is for compensatory and punitive damages alone. The named defendants include Bellevue Development Corp. ("Bellevue Development"), Wilson Forney, WSOS CAC, Inc. ("WSOS"), the city of Bellevue, Charles F. Trapp (former mayor of Bellevue), Kevin Scagnetti (Bellevue's city engineer), Marc Tibboles and Tibboles Well Drilling Company.
 {¶ 6} The undisputed facts in this case are as follows: Bellevue Development obtained and administered public grants used to assist in funding infrastructure improvements for the hospital facility. The organization did not build, design or plan the facility. It had no involvement in the digging of holes or wells at the site. Its work did not require it to review compliance with state or federal environmental regulations or to review environmental assessments.
 {¶ 7} Wilson Forney of WSOS prepared an Environmental Assessment with respect to the project and submitted it to Bellevue's mayor, Charles F. Trapp. The mayor certified, on behalf of the city of Bellevue, a finding that the proposed construction project would have no significant environmental impact and that a more extensive environmental impact statement was not required. Public notice was provided of the determination that the project would have no significant environmental impact, of the intent to seek release of public funds for the project, and for public comment. Other than through preparation of the Environmental Assessment, WSOS and Forney had no participation in the contracting, building, design, or planning of either the hospital facility or the injection wells on the facility property. *Page 4 
 {¶ 8} The city of Bellevue, its mayor and city engineer did not participate in the design of the hospital, did not participate in or control the construction of the hospital, and did not participate in or exercise any control over the design planning of the hospital outside of governmental functions performed by the Planning Commission. They also did not participate, direct or control or have any decision making role in placement of injection wells at the hospital facility.
 {¶ 9} Defendant-appellee Marc Tibboles of Tibboles Well Drilling Company drilled and constructed the Class V injection wells for the hospital. Tibboles did not select the locations for the wells. The specifications for the drilling and construction of the injection wells were provided by the contractor who hired Tibboles.
 {¶ 10} Each of the appellees filed motions for summary judgment in the trial court. By order of May 4, 2007, the trial court sustained the motions for summary judgment and entered judgment in favor of appellees and against appellants.
 {¶ 11} Appellants assign the following assignments of error for review on appeal:
 {¶ 12} "Assignment of Error No. I.
 {¶ 13} "Expert testimony is not necessary to establish a duty of care used in drilling wells in a rural setting when before the wells are dug citizens complain that the wells will affect their drinking water and shortly after the drilling of the wells the citizens experience silt, contaminates and other foreign substances in their drinking well water. A court abuses its discretion when they require expert testimony to defeat a motion for *Page 5 
summary judgment when the matters to be decided are not outside the knowledge of an ordinary lay person.
 {¶ 14} "Assignment of Error No. II
 {¶ 15} "Expert testimony is not necessary to establish a duty of care used in drilling wells when the person drilling the wells (defendant Tibboles) testifies to the standard to be used and that he did not follow said standard. A court abuses its discretion when it requires expert testimony to defeat a motion for summary judgment when the defendant testifies to the standard to be used and that he did not follow said standard.
 {¶ 16} "Assignment of Error No. III
 {¶ 17} "The trial court erred and abused its discretion by granting defendants' motion for summary judgment based on lack of jurisdiction merely because a plaintiff utilized a federal statute on one of many claims to infer negligence by the defendants.
 {¶ 18} "Assignment of Error No. III(A)
 {¶ 19} "There is a Private Cause of Action against all the Defendants for their negligence in State Court. Defendants chose not to remove the case to federal court and as such they are precluded from basing their case on a `Federal Standard.'
 {¶ 20} "Assignment of Error No. III(B)
 {¶ 21} "WSOS and other Defendants owed a duty to the Plaintiffs in privately preparing an environmental Assessment and in reviewing the environmental certification.
 {¶ 22} "Assignment of Error No. III(C) *Page 6 
 {¶ 23} "Defendants violated the rights of the Plaintiffs including, but not limited to trespassing and interfering with the use of their water over and above any `NEPA' violations."
 {¶ 24} Appellate courts review judgments granting motions for summary judgment de novo; that is, they apply the same standard for summary judgment as the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Civ. R. 56(C) provides:
 {¶ 25} "* * *Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.* * *"
 {¶ 26} Summary judgment is proper where the moving party demonstrates:
 {¶ 27} "* * *(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 28} Where a motion for summary judgment is made and supported by appropriate evidence showing the absence of a dispute of material fact, the burden shifts *Page 7 
to the opposing party to present evidence showing the existence of a genuine issue of fact for trial: "* * *an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ. R. 56(E).
 {¶ 29} Mark Tibboles and Tibboles Well Drilling supported their motion for summary judgment with the affidavit of expert witness, Gary T. Dannemiller, and the transcript of Marc Tibboles' own deposition testimony.
 {¶ 30} Dannemiller is a senior hydrologist with Soil and Materials Engineers, Inc. By affidavit, Dannemiller testified that it was his expert opinion that Tibboles Well Drilling "properly constructed" the injection wells for the hospital project "within the specifications and standards provided by the contractor and did not violate any injection well construction requirements."
 {¶ 31} In the amended complaint appellants alleged that the wells were drilled in a "negligent, reckless and faulty manner" and that the wells caused the contamination of appellants' well water. Appellants, however, chose not to support those allegations with expert witness testimony in their response to the Tibboles' motion for summary judgment. Under Assignment of Error No. I, appellants claim that no expert testimony was necessary. They claim that the standard of care required in the drilling and construction of injection wells is a matter within the knowledge of average lay persons. *Page 8 
 {¶ 32} In Jones v. Hawkes Hospital of Mt. Carmel (1964),175 Ohio St. 503, the Ohio Supreme Court identified when expert witness testimony is necessary: "Expert-opinion evidence is not required or necessary where the subject of the inquiry is within the common, ordinary and general experience and knowledge of mankind, but such evidence is required where the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill." Id., paragraph one of the syllabus.
 {¶ 33} Here, the contract specifications required the work to be performed by a driller with at least ten years of documented experience in drilling man-made sinkholes in the Bellevue area. The work involved drilling to the limestone, setting a steel casing in the limestone, sealing the annulus, and continued drilling through the limestone until the sinkhole could accommodate a contract specified, minimum flow rate. As demonstrated by the deposition of Marc Tibboles, such work required specialized knowledge and experience. Knowledge of such matters clearly is not within the ordinary and general experience of lay persons. In our view, the question of whether Marc Tibboles was negligent or reckless in drilling and constructing the Class V injection wells is a matter highly technical in nature involving questions of science, professional and mechanical skills. Expert opinion testimony was necessary to support the claim that Tibboles had negligently and recklessly drilled and constructed the injection wells.
 {¶ 34} Alternatively appellants argue that expert testimony was unnecessary because proof of negligence was established, circumstantially, under the doctrine of res *Page 9 
ipsa loquitur. Res ipsa loquitur "is a rule of evidence which permits the trier of fact to infer negligence on the part of the defendant from the circumstances surrounding the injury to the plaintiff." Hake v.Wiedmann Brewing Co. (1970), 23 Ohio St.2d 65, 66. For the doctrine to apply, it must be shown: "(1) [t]hat the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." Id.
 {¶ 35} The doctrine of res ipsa loquitur generally does relieve the requirement to present expert testimony to support a claim that a defendant breached a professional standard of care. See Cook v. ToledoHospital, 169 Ohio Ap.3d 180, 2006-Ohio-5278, ¶ 51 (medical malpractice claim). Unless negligence is apparent to lay persons, the plaintiff must present expert opinion testimony to show that the damages complained of would not have occurred if the defendant had exercised ordinary care. Id.
 {¶ 36} Here, any conclusion that water well contamination would not have occurred without the negligence of Mark Tibboles in drilling and constructing the injection wells requires expert evidence itself to establish. It requires proof as to potential causes of the well water contamination at the properties and elimination of any other potential cause of contamination other than negligence by Tibboles. Such evidence was lacking on the motion for summary judgment. Accordingly, the doctrine of res ipsa loquitur does not apply to the claim against Tibboles. *Page 10 
 {¶ 37} Appellants failed to present competent expert testimony supporting their claims of negligence and recklessness by Tibboles with respect to his drilling and construction of the injection wells. The expert opinion evidence submitted by Tibboles that he had not breached the standard of care for his work stood unrebutted in the trial court.
 {¶ 38} We find that appellants' first assignment of error is not well-taken.
 {¶ 39} Under Assignment of Error No. II, appellants argue, alternatively, that Tibboles own testimony established a failure to meet specifications on the injection wells and proof of negligence. The contract requirements for the injection wells included a requirement that "the casing pipe shall meet the water well casing standards of the State of Ohio." Appellants argue that Tibboles testified that in constructing the injection wells he followed state standards for injection well pipes, not water well standards.
 {¶ 40} Tibboles testified to use of casing pipe 21 feet in length. The state minimum length for Class V injection wells is 15 feet. There is no maximum length. Appellants argue that the contract required casing pipe 25 feet in length and that the 4 foot difference in the length actually used constitutes evidence of negligence by Tibboles. Appellants offered no testimony, however, supporting any theory that exceeding state minimum length standards for injection well casing pipe by six feet rather than ten feet may have played any roll in the claimed contamination or that it violated accepted standards in the trade or industry. *Page 11 
 {¶ 41} Appellee Tibboles has responded that appellants misunderstood his testimony and there was no deviation from contract specifications.
 {¶ 42} It is unnecessary to resolve the purported conflict. In our view evidence of the length of the casing pipe used, without expert witness testimony stating its significance, fails to constitute proof of negligence of Tibboles, where, as here, the length used exceeded state minimum requirements and it is not claimed that the length of pipe used violated accepted standards in the trade or industry.
 {¶ 43} Assignments of Error Nos. III, III(A) and III(B) all relate to the National Environmental Policy Act of 1969, 42 U.S.C.§ 4321 et seq., ("NEPA") and will be considered together. In the amended complaint, appellants alleged that Bellevue, its mayor, and city engineer promoted the Bellevue Hospital project, secured an insufficient environmental assessment, wrongly decided that a more detailed environmental impact statement under NEPA was not necessary, and otherwise allegedly failed to recognize and prevent environmental damage to appellants' persons and property allegedly caused by the construction of the hospital facility. WSOS and Wilson Forney were faulted for preparation of the Environmental Assessment. Appellants have claimed that Forney "supervised" the city's certification that the project would have no significant environmental impact and that no environmental impact statement was necessary under NEPA.
 {¶ 44} The lack of any remedy under NEPA for private individuals who claim to have been injured by violations of NEPA requirements is well established. E.g. Sierra *Page 12 Club v. Slater, 120 F.3d 623, 630 (6th Cir. 1997); Noe v. MetropolitanAtlanta Transit Authority, 644 F.2d 434 (5th Cir. 1981). The trial court granted appellees summary judgment on appellants' NEPA claims.
 {¶ 45} Under Assignments of Error Nos. III, III(A) and III(B), appellants seek recognition of a private remedy under Ohio law for neighboring property owners who claim they were damaged by a project where NEPA procedures were violated. Appellants have cited no authority for the proposition.
 {¶ 46} In our view, recognition of the existence of such a remedy would conflict with the common law "public-duty rule" and the statutory immunities afforded political subdivisions and their employees under R.C. Chapter 2744.
 {¶ 47} Under the common law, public duty rule, "[w]hen a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, is generally a public and not an individual injury." Sawicki v. OttawaHills (1988), 37 Ohio St.3d 222, paragraph two of the syllabus. Under the rule, private claims for breach of a public duty require proof of a special relationship. Id., paragraphs three and four of the syllabus. The Sawicki decision was issued subsequent to the abrogation of municipal sovereign immunity and prior to the reinstatement of sovereign immunity to state political subdivisions through enactment of R.C. Chapter 2744.
 {¶ 48} Political subdivision immunity under R.C. Chapter 2744 involves a three-tier analysis. Under the first tier, municipalities are immune under R.C. 2744.02(A) (1) *Page 13 
from claims arising out of the governmental functions. R.C.2744.01(C)(2)(p) defines governmental functions to include:
 {¶ 49} "(p) The provision or nonprovision of inspection services of all types, including, but not limited to, inspections in connection with building, zoning, sanitation, fire, plumbing, and electrical codes and the taking of actions in connection with those types of codes, including, but not limited to the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits or stop work orders in connection with buildings or structures [.]"
 {¶ 50} The city of Bellevue, its mayor and city engineer assert that the city's actions in securing an environmental assessment, in evaluating it and in determining whether an environmental impact statement was necessary before permitting the hospital project to proceed are of the type of activities that come within the definition of governmental functions as defined under R.C. 2744.01(C)(2)(p).
 {¶ 51} Municipal activities relating to zoning, building inspections, and building code enforcement have been recognized as coming within the general immunity afforded governmental functions. E.g. Stanton v.Cleveland, 8th Dist. No. 82614, 2003-Ohio-6618; Brewer v. West ChesterTownship Planning and Zoning Dept., 12th Dist. No. CA2002-01-026, 2002-Ohio-4483; Browning v. Chillicothe (Dec. 20, 1995), 4th Dist. No. 95-CA-2086.
 {¶ 52} We agree that the municipal activities under NEPA of the type involved in this case come within the definition of governmental functions under R.C. *Page 14 2744.01(C)(2)(p) and thereby come within the general grant of immunity for the city of Bellevue. Appellants have not argued any facts upon which any exception to immunity for the city of Bellevue applies under R.C. 2744.02(B), under the second tier analysis under the statute.
 {¶ 53} Appellants also have not disputed the affidavits of Mayor Trapp and Engineer Scagnetti which indicate that all their actions with respect to the project were undertaken in good faith and in performance of their respective duties as mayor and as city engineer. Under R.C.2744.03(A)(6), Mayor Trapp and Engineer Scagnetti are immune from personal liability as, under the undisputed facts, their actions were within the scope of their employment and not conducted with a malicious purpose, in bad faith or in a wanton or reckless manner.
 {¶ 54} We decline to extend Ohio law to create a private remedy for individuals who claim to have been injured by violations of NEPA requirements. Even were such a remedy declared to exist, under the undisputed facts, the city of Bellevue, its former mayor, and its city engineer would be immune from liability for such claims.
 {¶ 55} Under the undisputed facts, evidence is lacking to support a NEPA violation claim as against any of the private defendants. As to WSOS and Forney, their motion for summary judgment was supported by the affidavit of an expert witness with over 25 years of experience in environmental engineering, project management and regulatory affairs. In the expert's opinion, the Environmental Assessment completed by Wilson Forney and WSOS complied with the requirements of NEPA. *Page 15 
 {¶ 56} Appellants did not submit expert evidence opposing the conclusion that Forney and WSOS complied with NEPA requirements. Appellants, therefore, failed to show the existence of a genuine issue of fact for trial on the issue. Bellevue Development presented evidence demonstrating that it played no role in NEPA activities and sought summary judgment as to appellants' NEPA claims on that basis.
 {¶ 57} Accordingly, even if a private state law right to relief existed for NEPA violations, there was no dispute of material fact and appellees Forney, WSOS, and Bellevue Development were each entitled to summary judgment on appellants' claims as to liability based upon NEPA.
 {¶ 58} We find Assignments of Error Nos. III, III(A) and III(B) are not well-taken.
 {¶ 59} Assignment of Error No. III(C) provides: "Defendants violated the rights of the Plaintiffs including, but not limited to trespassing and interfering with the use of their water over and above any "NEPA" violations." Although the Assignment of Error No. III(C) refers to all defendants, appellants have limited their legal argument under the assigned error to claims relating to asserted governmental action and liability alone. We limit our review to the contentions actually argued by appellants on the appeal — claims against the city of Bellevue.
 {¶ 60} Appellants argue under Assignment of Error No. III (C) that water rights are protected from "governmental invasion" and "that governmental interference with riparian rights constitutes a taking." They argue that the city of Bellevue deprived appellants of their groundwater rights. *Page 16 
 {¶ 61} The Fifth Amendment to the United States Constitution and Section 19, Article I, Ohio Constitution prohibit the taking of private property for public use without just compensation. State ex rel. ShellyMaterials, Inc. v. Clark Cty. Bd. of Commrs. 115 Ohio St.3d 337,2007-Ohio-5022, ¶ 16. "In some instances, moreover, a direct appropriation or ouster does not occur, but government regulation of private property becomes so onerous that its effect is tantamount to a condemnation and such regulatory taking may be compensable under theFifth Amendment." State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd.of Commrs., ¶ 17, citing Pennsylvania Coal Co. v. Mahon (1922),260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322.
 {¶ 62} In our view, the undisputed facts show that no governmental action deprived appellants of their groundwater rights. The city of Bellevue's actions were limited to securing an environmental assessment, evaluating it, and determining that the hospital project involved no significant environmental impact. The city sought release of public funds to permit the project to proceed. Appellants may disagree with the city's evaluation of environmental risks posed by the project, but in our view the city's actions did not constitute either a condemnation or regulatory taking of private property under either the United States Constitution or the Ohio Constitution. Accordingly, we find Assignment of Error No. III(C) not well-taken.
 {¶ 63} Upon review, construing the facts in favor of appellants, we find that there is no dispute of material fact and that appellees are entitled to summary judgment as a matter of law on all claims asserted against them by appellants. We affirm the judgment *Page 17 
of the Sandusky County Court of Common Pleas. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Sandusky County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 1