[Cite as *Austin v. Warrensville Hts.*, 2021-Ohio-1950.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JAMES AUSTIN, ET AL., :

    Plaintiffs-Appellants, :

                        No. 109791

v. :

CITY OF WARRENSVILLE
HEIGHTS, ET AL., :

    Defendants-Appellees. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 10, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-916635

---

### *Appearances:*

Forbes, Fields & Associates Co., L.P.A., Darrell A. Fields, and John M. Sayers, *for appellants*.

Mazanec, Raskin & Ryder Co., L.P.A., James A. Climer, Frank H. Scialdone, and Amily A. Imbrogno; Teresa Metcalf Beasley, City Law Director, *for appellee* City of Warrensville Heights.

LARRY A. JONES, SR., P.J.:

{¶ 1} Plaintiffs-appellants James and Denise Austin ("the Austins") appeal from the trial court's judgment granting defendant-appellee city of Warrensville Heights' ("Warrensville Heights") motion for judgment on the pleadings. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} The Austins initiated this action in June 2019; the case revolved around their purchase of real estate on Dandridge Drive in Warrensville Heights. The Austins alleged that they purchased the property unaware that it was subject to a special tax assessment in the amount of $34,829.27 for a public improvement. Specifically, an employee of the city's building department represented to Barristers of Ohio, L.L.C., the title agency involved in the transaction, that the property was not subject to any special assessments. In addition to the city of Warrensville Heights, the other named defendants were the sellers of the property, Swarup and Nutan Mukherjee, and the title company, Barristers of Ohio, L.L.C. This appeal relates to the transaction as it pertained to Warrensville Heights, against which the plaintiffs brought a claim for negligent misrepresentation; it does not implicate the other defendants.

{¶ 3} Warrensville Heights filed an answer to the Austins' complaint and also a motion for judgment on the pleadings that the Austins opposed. In its motion, the city contended it was entitled to judgment on the pleadings on the grounds of (1) immunity under R.C. 2744.02; (2) the Austins' inability to establish

the elements of negligent misrepresentation; and (3) its lack of a duty owed to the Austins. The trial court granted the city's motion for judgment on the pleadings, and after seeking and obtaining Civ.R. 54 certification that there is "no just reason for delay," the Austins appealed and set forth the following three assignments of error for our review:

I.   The trial court erred in finding that appellee city of Warrensville Heights was immune from liability, when the court granted appellee city of Warrensville Heights's motion for judgment on the pleadings.

II.  The trial court erred in finding that appellants James and Denise Austin could not establish their claim for negligent misrepresentation, when the court granted appellee city of Warrensville Heights's motion for judgment on the pleadings.

III. The trial court erred in finding that appellee city of Warrensville Heights did not owe a duty of care to appellants James and Denise Austin, when it granted appellee city of Warrensville Heights's motion for judgment on the pleadings.

## Law and Analysis

### Motion for Judgment on the Pleadings

{¶ 4} Civ.R. 12(C) allows any party to move for judgment on the pleadings after the time for pleading has closed. Motions under Civ.R. 12(C) "are specifically for resolving questions of law," and a court may consider both the complaint and answer when resolving such a motion. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996), citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166, 297 N.E.2d 113 (1973). "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the

nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his [or her] claim that would entitle him [or her] to relief." *Pontious* at *id.*, citing *Lin v. Gatehouse Constr. Co.*, 84 Ohio App.3d 96, 99, 616 N.E.2d 519 (8th Dist.1992).

{¶ 5} Because an appeal of a decision granting a motion for judgment on the pleadings under Civ.R. 12(C) raises only questions of law, the standard for appellate review is de novo. *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 18, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

**R.C. Chapter 2744**

{¶ 6} The Austins' first assignment of error challenges the trial court's finding that Warrensville Heights was immune from liability.

{¶ 7} To determine whether a political subdivision enjoys immunity under the Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, we employ the three-tiered analysis set forth in *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781.

{¶ 8} "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B)." *Colbert* at ¶ 7, citing *Greene Cty. Agricultural Soc. v. Liming*,

89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141 (2000), and *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998).

{¶ 9} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Colbert* at ¶ 8, citing *Cater* at *id.* The exceptions under R.C. 2744.02(B) are (1) the negligent operation of a motor vehicle by an employee, R.C. 2744.02(B)(1), (2) the negligent performance of proprietary functions, R.C. 2744.02(B)(2), (3) the negligent failure to keep public roads open and in repair, R.C. 2744.02(B)(3), (4) the negligence of employees occurring within or on the grounds of, and due to physical defects within or on the grounds of, certain buildings used in connection with the performance of governmental functions, R.C. 2744.02(B)(4), or (5) express imposition of liability by statute, R.C. 2744.02(B)(5).

> If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense to that section protects the political subdivision from liability, * * * the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability.

*Colbert* at ¶ 9.

{¶ 10} It is undisputed that the city of Warrensville Heights is a political subdivision and therefore enjoys blanket immunity under the first *Colbert* tier. We next consider the crux of this appeal — whether an exception to immunity under R.C. 2744.02(B) applies. The Austins contend that the exception under R.C. 2744.02(B)(2) — the negligent performance of proprietary functions — applies.

Under that exception, with certain limitations, "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2).

{¶ 11} The Austins contend that the disclosure of whether property is subject to special assessments is a proprietary function. On the other hand, Warrensville Heights maintains that it is a governmental function.

{¶ 12} R.C. 2744.01 provides lists of specific functions that are considered governmental and proprietary functions. R.C. 2744.01(C)(2) (list of governmental functions); R.C. 2744.01(G)(2) (list of proprietary functions). That statute also contains general definitions for governmental functions and proprietary functions so that if a function is not enumerated in either list, it can be determined whether such function is governmental or proprietary. R.C. 2744.01(C)(1) (general definition of governmental function); R.C. 2744.01(G)(1) (general definition of proprietary function).

{¶ 13} It has been noted that the simple difference between the definitions for proprietary and governmental functions in R.C. 2744.01(C)(1) and (G)(1) is that proprietary functions include activities customarily performed by nongovernmental persons whereas governmental functions are activities that are not customarily engaged in by nongovernmental persons. *See Foland v. Englewood*, 2d Dist. Montgomery No. 22940, 2010-Ohio-1905, ¶ 49. In determining whether a function is customarily engaged in by nongovernmental

persons, the central consideration is the specific activity, not the general activity. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 560, 733 N.E.2d 1141 (2000).

{¶ 14} According to the Austins, the information (or lack thereof) given by the city's building department was in execution of a proprietary function; they rely, in part, on *Liming* in support of their contention. In *Liming*, an agricultural society, a governmental entity that operated a hog contest at the county fair, brought action against a contestant in the contest based on violation of the rules of the contest. The contestant filed a counterclaim against the society, and the Ohio Supreme Court considered whether the operation of the contest was a governmental or proprietary function.

{¶ 15} The court held that the "conducting of a livestock competition at a county fair by a county agricultural society is a proprietary function pursuant to R.C. Chapter 2744." *Id.* at 561. It reasoned as follows:

> It is apparent to us that even though conducting a county fair may be an activity not customarily engaged in by nongovernmental persons, conducting a livestock competition is an activity customarily engaged in by nongovernmental persons. Any organization, whether private or public, can hold a competition of this type. The consideration that many such competitions are conducted within county fairs cannot change the fact that there is nothing inherently governmental about them. In this situation, educational value alone is not enough to convert what otherwise would not be a governmental function into something that is a governmental function. We see no reason to distinguish a livestock competition at a county fair from any other similar competition, such as a livestock competition held elsewhere than at a county fair, or a dog or cat show, or an art show, or a chili cook-off, or a beauty pageant, or a car show.

*Id.* at 560.

{¶ 16} We find *Liming* distinguishable from this case. Here, the activity was a governmental employee of the city's building department providing information that was clearly maintained by the building department. Whereas, in *Liming*, the activity was conducting a hog competition. We are not persuaded by the Austins' contention that persons other than governmental employees also disclose whether property is subject to special assessments and, therefore, that makes it a proprietary function. This court has previously held that,

> "R.C. 2744.01(C) does not exclude from the definition of governmental functions those functions sometimes performed by private entities for political subdivisions. In fact, many of the specifically enumerated governmental functions set forth in R.C. 2744.01(C)(1) are commonly performed by private entities for political subdivisions * * *."

*Lyons v. Teamhealth Midwest Cleveland*, 8th Dist. Cuyahoga No. 96336, 2011-Ohio-5501, ¶ 46, quoting *McCloud v. Nimmer*, 72 Ohio App.3d 533, 595 N.E.2d 492 (8th Dist.1991).

{¶ 17} Thus, a political subdivision may use independent contractors to perform a governmental function without transforming the activity involved into a proprietary function. *See, e.g., Craycraft v. Simmons*, 2d Dist. Montgomery No. 24313, 2011-Ohio-3273. In *Craycraft*, the plaintiff asserted that the provision of school security was a proprietary function because independent contractors sometimes perform the job. The Second Appellate District rejected the assertion, stating:

We do not dispute that a school may choose to contract with a private company to provide security. But this does not negate the fact that the nature of the work involved, providing security for public school students on school grounds, is a governmental function. [Plaintiff's] argument fails to recognize that a political subdivision may use independent contractors to perform a governmental function. *See, e.g., Howell v. Canton,* [9th Dist.] Stark App. No. 2007CA00035, 2008-Ohio-5558 (involving an independent contractor hired to perform a governmental function). [Plaintiff] cites nothing to establish that doing so transforms the activity involved from a governmental function into a proprietary function.

*Craycraft* at ¶ 22.

{¶ 18} Similarly, here, just because other, nongovernmental persons may also disclose the existence of a special assessment does not automatically make it a proprietary function. We agree with the trial court's finding in this case that "the city's operation of a building department is a governmental function." Trial court's Memorandum of Opinion and Order, January 13, 2020, ¶ 7, citing *Skiles v. Bellevue Dev. Corp.*, 6th Dist. Sandusky No. S-07-015, 2008-Ohio-78, ¶ 51. We find that the city's employee who provided the subject information did so in his or her capacity as a governmental employee. Thus, the Austins failed to establish the second-tier of immunity under *Cater*; that is, that an exception to immunity listed in R.C. 2744.02(B) applied.

{¶ 19} In light of the above, the first assignment of error is overruled.

**Supplying False Information in a Transaction in which Supplier has a Pecuniary Interest**

{¶ 20} For their second assignment of error, the Austins contend that the trial court erred in finding that they could not establish a claim for negligent misrepresentation.

{¶ 21} The elements of negligent misrepresentation are (1) one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest; (2) supplies false information for the guidance of others in their business transactions; (3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; and (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information. *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989). The Austins specifically challenge the trial court's finding that the city did not have a pecuniary interest in the special assessment.

{¶ 22} Initially, we note that the city's building department is not in the business of advising or rendering opinions to its citizens or potential citizens. Rather, a municipality's building department's interest is generally in enforcing building codes to maintain the housing stock and for the purpose of ensuring a healthful, safe, and sanitary environment for the municipality's occupants. *See State ex rel. Eaton v. Price*, 168 Ohio St. 123, 151 N.E.2d 523 (1958).

{¶ 23} In regard to the pecuniary interest component of a negligent misrepresentation claim, we find that the Austins' claim failed as a matter of law. It is true that the city received the money from the assessment, but the city has no pecuniary interest in and of itself in providing information regarding assessments. "The foundation of special assessments for public improvements, is the special benefit derived by the owners of property, over and above the rest of the community." *Wewell v. Cincinnati*, 45 Ohio St. 407, 424, 15 N.E. 196 (1887); *see also Adams v. Toledo*, 6th Dist. Lucas No. L-80-034, 1980 Ohio App. LEXIS 12396 (Dec. 5, 1980) (homeowners must demonstrate by clear and convincing evidence that their property did not benefit from special assessment for public improvement). Thus, it is presumed that the pecuniary interest inured to the subject homeowners, including the Austins, and not to the city.

{¶ 24} At the trial court level, the Austins relied on *Patel v. Univ. of Toledo*, 10th Dist. Franklin No. 16AP-78, 2017-Ohio-7132, for the proposition that the city of Warrensville Heights had a pecuniary interest in providing information about the special assessment. We find *Patel* distinguishable from this case.

{¶ 25} In *Patel*, the plaintiff enrolled in the University of Toledo's graduate Bachelor of Science in nursing to doctor of nursing program ("BSN-DNP program") in August 2012. *Id.* at ¶ 2. At the time, the BSN-DNP program was new, unaccredited, and the plaintiff was one of three students in the inaugural class.

{¶ 26} The plaintiff was concerned about the lack of accreditation, and on the first day of classes, she asked the dean of the college of nursing when the BSN-DNP program would be accredited. According to the plaintiff, the dean answered "unequivocally" that the BSN-DNP program would be accredited before the first student graduated from the program. *Id.* at ¶ 3. Another student in the inaugural class stated she heard the plaintiff's question and the dean's response. The plaintiff claimed that if it was not possible to graduate from an accredited program, she was prepared to leave the university that first day and enroll in a different accredited program. The dean testified, however, that he would have "never" told the plaintiff that the BSN-DNP program would be accredited before the first student graduated because he knew what those standards were and the statement "would not [have been] true." *Id.*

{¶ 27} In January 2014, the plaintiff contacted her graduate nursing advisor to determine whether she could change her plan of study and graduate in August 2015. The plaintiff wanted to work in a residency program that began in September or October 2015. Her advisor consulted with the nursing program director and they indicated the plaintiff could change her course of study and graduate in August 2015 if she took classes during the summer.

{¶ 28} Soon after, the plaintiff learned that the university's BSN-DNP program would not be accredited by August 2015. The plaintiff sought to transfer to the university's master-in-nursing program, which was accredited, but the nursing program director informed her that was not possible.

{¶ 29} Meanwhile, the dean of the nursing school expected the BSN-DNP program to be accredited in May 2016. If the university's application for accreditation was approved, the accreditation would have related back to the date of the site visit, which occurred in fall 2015. Thus, the faculty advised the plaintiff to graduate in December 2015 to have a possibility of graduating from an accredited program. If a student does not graduate from an accredited program, the student is ineligible to take the national certification examination resulting in licensure, and in Ohio, cannot work as an advanced practice nurse. *Id.* at ¶ 5.

{¶ 30} The plaintiff withdrew from the university in fall 2014, enrolled in another university's DNP program, and graduated in December 2015. The plaintiff thereafter filed a complaint against the University of Toledo and the dean of the nursing school alleging negligent misrepresentation, among other claims. The defendants moved for summary judgment and the court of claims granted it. On appeal, the Tenth Appellate District found that the plaintiff did present a genuine issue of material fact regarding whether the University of Toledo (but not the dean) had a pecuniary interest since the university had an interest in the students remaining in the BSN-DNP program and for the program to expand.

{¶ 31} The within case is distinguishable from *Patel*. The pecuniary interest the university had in the plaintiff was patently obvious, inured directly to the university, and was used to induce the student to remain in the school's program. Here, however, as mentioned, special assessments such as the one at issue in this case, are generally directed to the benefit of the citizens rather than

the municipality, and the city did not "induce" the Austins to purchase the property with the economic benefit in mind the same way the university induced the plaintiff in *Patel* to remain in its program.

{¶ 32} In light of the above, the second assignment of error is overruled.

**Duty**

{¶ 33} For their final assignment of error, the Austins contend that the trial court erred in finding that the city did not owe a duty to them.

{¶ 34} The trial court stated that there was a requirement that the plaintiffs had to have a "special relationship" with the city and cited to a federal district court opinion from the Southern District of Ohio, *Lesniak v. Mission Essential Personnel, LLC*, S.D.Ohio No. 2:12-cv-1041, 2013 U.S. Dist. LEXIS 161704 (Nov. 13, 2013). The city also contends that such a special relationship must exist and cites federal cases in support of same.[1] Thus, where negligent misrepresentation claims have been recognized, the courts have emphasized the existence of a duty to provide accurate information to the plaintiff that goes beyond the common-law duty to exercise reasonable care to prevent foreseeable harm. *See, e.g., Haddon View Invest. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 156-157, 436 N.E.2d 212 (1982); *Delman*, 41 Ohio St.3d at 4, 534 N.E.2d 835; *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 87 Ohio App.3d 613, 630-633, 622 N.E.2d 1093 (8th Dist.1993).

---

[1] *See Doe v. SexSearch.com*, 502 F.Supp.2d 719 (N.D.Ohio 2007); *Ziegler v. Findlay Indus.*, 464 F.Supp.2d 733 (N.D.Ohio 2006); *Cuyahoga Metro. Hous. Auth. v. 10-8 Sys., Inc.*, No. 1:05 CV 0980, 2006 WL 543103 (N.D.Ohio 2006); and *Picker Internatl., Inc. v. Mayo Found.*, 6 F.Supp.2d 685 (N.D.Ohio 1998).

{¶ 35} "In negligent-misrepresentation claims, the scope of the special duty and the scope of the permissible recovery will vary on a case-by-case basis." *Universal Contracting Corp. v. Aug*, 1st Dist. Hamilton No. C-030719, 2004-Ohio-7133, ¶ 16. Where the relationship between the plaintiff and the party negligently providing information is fiduciary-like, the information provider owes a higher duty of care, even to those parties not in privity with it. *See, e.g, Haddon View Invest. Co.*, 70 Ohio St.2d 154, 156, 436 N.E.2d 212.

{¶ 36} In this case, there was no fiduciary-like relationship between the Austins and the city of Warrensville Hts. Moreover, the Austin's complaint failed to even allege any actionable duty that the city owed to them. Count 1 of the complaint pertained to the city and alleged that the city negligently misrepresented that the subject property was not subject to the assessment, but did not even contain the word "duty" in any of the allegations. *See* Complaint, ¶ 1-13 (pertaining to claim against the city of Warrensville Heights).

{¶ 37} Thus, we agree with the trial court's finding that the Austins "provide no evidence of a 'legal relationship' between the parties, nor do they cite to any statute or common law in order to establish the City's duty and its breach," and that their "conclusory statements" cannot withstand the city's motion for judgment on the pleadings. Trial court's Memorandum of Opinion and Order, January 13, 2020, ¶ 14, 15.

{¶ 38} The third assignment of error is overruled.

**{¶ 39}** Because the city was entitled to immunity under R.C. Chapter 2744, the trial court properly granted its motion for judgment on the pleadings. Even if the city had not been entitled to immunity, the trial court properly found that the Austins failed as a matter of law to establish the elements for a negligent misrepresentation claim.

**{¶ 40}** Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EMANUELLA D. GROVES, J., CONCUR